William E. COMPTON, Appellant,

v.

WYLE LABORATORIES, Exxon
Corporation, Appellees,

v.

CALL CARL OF VIRGINIA, INC., Curtis
Toledo, Inc., Third Party Defendants.

William E. COMPTON, Appellee,

v.

WYLE LABORATORIES, Appellee,

and

EXXON CORPORATION, Appellant,

v.

CALL CARL OF VIRGINIA, INC., Curtis
Toledo, Inc., Third Party Defendants.

Nos. 80-1418, 80-1441.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 5, 1982.

Decided March 5, 1982.

Aubrey M. Daniel, III; Washington, D. C. (Douglas R. Marvin, Carolyn H. Williams, Williams & Connolly, Washington, D. C., on brief), for appellant.

John J. Brandt, Arlington, Va. (Slenker, Brandt, Jennings & Johnston, Arlington, Va., on brief), for appellee Exxon Corp.

James C. Gregg, Washington, D. C. (Mac-Leay, Lynch, Bernhard, Gregg & Attridge, Washington, D. C., on brief), for appellee Wyle Laboratories.

Before INGRAHAM,* Senior Circuit Judge, and HALL and SPROUSE, Circuit Judges.

K. K. HALL, Circuit Judge:

This case involves an appeal by William H. Compton and a cross-appeal by Exxon Corporation from a verdict in favor of Compton for injuries he received when an automobile rolled off a hydraulic lift and fell upon him. We affirm.

## I.

Compton was employed as a mechanic at a Fairfax, Virginia, service station operated by Call Carl of Virginia, Inc. Exxon owned the station and leased it to Call Carl. The station was equipped with a drive-on type hydraulic car lift manufactured by Curtis Manufacturing Company, the predecessor of Wyle Laboratories.

---

* Honorable Joe M. Ingraham, Senior Circuit Judge for the Fifth Circuit Court of Appeals, sitting by designation.

Compton was injured on June 12, 1978. The station manager instructed him to work on the exhaust system of a Mercury station wagon, so Compton drove the car onto the lift and raised it until he could stand underneath. He did not shift the transmission into "Park," nor did he engage the emergency brake. As Compton attempted to remove the tailpipe by hammering and pulling upon it, the car began to roll backwards. Though he grabbed the rear axle in a futile attempt to stop the car, it rolled off the lift and fell upon him, inflicting massive injuries.

The Curtis lift consisted of two steel rails or ramps attached to a hydraulic piston built into the station floor. To use the lift, the mechanic would drive an automobile onto the rails, and then lift the car hydraulically. The rails were equipped with automatic safety chocks to prevent the car from rolling off while the lift was in a raised position. These chocks consisted of a metal flap connected to a counterweight. When the lift was completely lowered, the flaps would lie flush with the surface of the rail, permitting a car to be driven over them. As the lift was raised, the counterweights would drop and the flap would rotate upwards. Once the flaps reached the proper angle, ramp locks would engage to hold the flaps in place so they would provide barriers to the car's wheels.

Compton's evidence indicated that the ramp locks had become bent and deformed until they could no longer hold the chocks in place in a reliable manner. He attributed this condition to a faulty design by Wyle and the negligent inspection and maintenance by Exxon. He further alleged that Wyle and Exxon had breached implied warranties of fitness for intended use. The defendants argued that Compton had failed to use reasonable care for his own safety. Exxon and Wyle exchanged crossclaims and Exxon filed a third party action against Call Carl.

The jury returned a verdict against Exxon and in favor of Wyle on both the negligence and warranty claims, and awarded Compton damages of $300,000. The court denied Exxon's crossclaim against Wyle, but entered judgment in favor of Exxon on its indemnity claim against Call Carl.

## II.

Exxon first contends that it was not negligent as a matter of law because it had no duty to inspect the lift for sophisticated design defects. According to the evidence, the lift in question was manufactured and installed at the Fairfax station in 1958. Exxon purchased the station in 1967, and leased it to Call Carl. Under the terms of the lease, Call Carl was obligated to perform the "necessary ordinary maintenance, lubrication, examination and inspection of hydraulic lifts . . . ." However, Exxon was responsible for supplying and installing replacement parts on the lifts. In addition, Exxon reserved the right to inspect the station and did so yearly.

■ While we agree that Call Carl bore primary responsibility for inspecting the lifts, the evidence indicates that Exxon's negligence stems from omissions far beyond a mere failure to inspect. For example, Exxon became aware as early as 1973 that this particular lift was suffering from age and a lack of maintenance, yet did nothing to correct the situation. Further, Exxon was also aware that mechanics in other stations were using drive-on lifts without locking the transmission or setting the emergency brakes, but took no steps to warn mechanics or station managers to guard against this practice. Viewed most favorably towards Compton, this evidence created a sufficient issue of negligence and amply supports the verdict.[1]

## III.

Compton argues that the verdict in favor of Wyle on the warranty claim was con-

---

1. In a related issue, Exxon contends that the verdict against it for warranty was contrary to law because Virginia does not recognize an implied warranty of fitness by lessors. As noted earlier, Compton prevailed against Exxon on alternate theories of negligence and warranty. Since we have affirmed on the negligence count, we do not find it necessary to address the warranty issue.

trary to the evidence. According to Compton the lift was defective when marketed because the ramp lock was too weak to withstand normal use. This allegation was supported by expert testimony and by evidence that the ramp lock was made significantly stronger on subsequently manufactured lifts.

On the other hand, Wyle introduced expert testimony that the lock was sufficiently strong, that the lift met the design standards applicable at the time of manufacture, and that the lift had been subjected to substantial wear and poor maintenance. Thus, the jury was given conflicting evidence which it resolved in Wyle's favor. We find no error in that determination.

### IV.

Compton contends that the court's decision to give an instruction on contributory negligence was erroneous because the safety chocks were intended to protect a mechanic from the very conduct the defendants contended was negligent. Assuming Compton's argument is correct, any resulting error was clearly harmless. Under the instruction, Compton's contributory negligence would have barred any recovery on a negligence claim, yet he prevailed on that claim against Exxon. The jury obviously rejected the defense, so Compton could not have been prejudiced by the instruction.[2]

### V.

Compton contends that his damage verdict of $300,000 was inadequate as a matter of law. We disagree. The assessment of damages is entrusted to the jury, and is not subject to review unless unconscionable or motivated by extreme prejudice. We find nothing in the verdict to convince us that the verdict was improper.

### VI.

In addition to the foregoing contentions, the parties have raised a number of other issues dealing with a variety of topics. Having carefully reviewed these arguments in light of the record, we find no basis for reversing the judgment or awarding a new trial.

Accordingly, the judgment of the district court is affirmed.

AFFIRMED.

---

**2.** Compton argues that the instruction resulted in a lower damage verdict because the jury compromised his negligence against that of Exxon. This argument is purely speculative and does not justify reversal.