**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

LARRY S. DUDLEY,
Plaintiff-Appellee,

v.

BUNGEE INTERNATIONAL
MANUFACTURING CORPORATION,

No. 95-1204

Defendant-Appellant,

and

THE PRICE COMPANY, d/b/a Price
Club,
Defendant.

Appeal from the United States District Court
for the Western District of Virginia, at Charlottesville.
B. Waugh Crigler, Magistrate Judge.
(CA-93-21-C)

Argued: December 7, 1995

Decided: January 31, 1996

Before HALL and HAMILTON, Circuit Judges, and
THORNBURG, United States District Judge for the Western
District of North Carolina, sitting by designation.

_____

Affirmed in part and reversed in part by unpublished per curiam opin-
ion.

_____

**COUNSEL**

**ARGUED:** Donald R. Morin, MORIN & BARKLEY, Charlottes-
ville, Virginia, for Appellant. Bruce David Rasmussen, MICHIE,

HAMLETT, LOWRY, RASMUSSEN & TWEEL, P.C., Charlottes-ville, Virginia, for Appellee. **ON BRIEF:** Leon F. Szeptycki, Patricia C. Karppi, MCGUIRE, WOODS, BATTLE & BOOTHE, L.L.P., Charlottesville, Virginia, for Appellant. Edmund R. Michie, MICHIE, HAMLETT, LOWRY, RASMUSSEN & TWEEL, P.C., Charlottes-ville, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant, Bungee International Manufacturing Corporation (Bungee), appeals the magistrate judge's entry of judgment in favor of the appellee, Larry S. Dudley (Dudley), following a jury trial in a products liability action. For the reasons discussed below, we affirm in part and reverse in part.

I.

This action arises out of an injury Dudley sustained to his left eye on September 17, 1992, while using one of Bungee's cords to secure the flaps of a tarp covering a load of plywood on his trailer. To secure the tarp, Dudley first placed the cradle of one hook (the curved part of the hook) into one of the tarp's grommets. Dudley then stretched the cord and fastened the hook on the other end of the cord to a metal cup along the side of the trailer. After Dudley fastened the second hook in the metal cup, the first hook that had been in the grommet of the tarp bent and released from the grommet as Dudley was in the process of letting go of the stretched portion of the cord. The cord then snapped back towards Dudley, and the hook that had been in the grommet of the tarp struck him in the left eye causing permanent eye damage.

2

Dudley, a Virginia citizen, commenced this diversity action against Bungee and the retailer of the cords, Price Club. [1] Dudley's complaint alleged claims against both defendants for negligence, breach of express and implied warranties, violation of the Virginia Consumer Protection Act, actual fraud, and constructive fraud. In particular, Dudley's complaint alleged that Bungee was negligent in designing the cord and negligent in failing to adequately warn Dudley of the cord's potential danger. The parties consented to the jurisdiction of, and all the proceedings were heard by, a magistrate judge. See 28 U.S.C.A. § 636(c) (West 1993).

The jury returned a verdict against Bungee on Dudley's claims for breach of express warranty[2] and negligence, but failed to distinguish between Dudley's negligent design and negligent warning claims.[3] The jury, however, returned a verdict for Bungee on Dudley's claim for breach of implied warranty and his claim for Bungee's alleged violation of the Virginia Consumer Protection Act. The jury also returned a verdict for Price Club on all of Dudley's claims. The jury awarded Dudley $350,000 in compensatory damages on his claims for breach of express warranty and negligence and $350,000 in punitive damages.

After the magistrate judge entered judgment on the verdict, Bungee filed a motion for judgment as a matter of law and for a new trial. The magistrate judge denied those motions, and Bungee timely filed its notice of appeal.

_____

[1] It is undisputed that Virginia law applies.

[2] Dudley contends that Bungee created an express warranty with the following three statements: (1) that the cords were"MADE IN USA"; (2) that the cords were "PREMIUM QUALITY"; and (3) that "When properly used, BUNGEE cords are safe and dependable for industrial, trucking, marine, automotive, and recreational vehicle use where tough, high-tensile strength is required." (J.A. 1325).

[3] Although the verdict form submitted to the jury was a special verdict as to the majority of Dudley's claims, it was a general verdict as to Dudley's negligence claim because it did not distinguish between Dudley's design defect and failure to warn claims.

II.

Bungee raises numerous assignments of error, only a few of which merit discussion. We shall address each of these assignments of error in turn.

A.

Bungee first contends that the magistrate judge erred in failing to grant it judgment as a matter of law on Dudley's negligence claim. Bungee does not attack the jury's finding that it was negligent in either designing the cord or in failing to warn of the cord's dangers.[4] Instead, as Bungee's argument goes, Dudley presented insufficient evidence to allow a jury to find the cause of the accident, leaving the jury to speculate whether Bungee's negligence was the proximate cause of Dudley's injuries. See Edwards v. Hobson, 54 S.E.2d 857, 859 (Va. 1949) (plaintiff cannot recover under a negligence theory if the evidence leaves the cause of the accident "wholly within the realm of surmise and speculation"). We disagree.

Dudley produced sufficient evidence demonstrating the cause of the accident. He presented evidence that the hook bent, released, and struck him in the eye because the cord's hook was not strong enough to withstand the force he applied to it as he stretched the cord. Even though Dudley initially fastened the cradle of the cord's hook in the tarp's grommet, Dudley's expert witness (Hendrickson) testified that the hook could have become caught at its tip (tip loaded) on an object adjacent to it. Hendrickson specifically noted that the cord's hook could have shifted positions and become tip loaded as Dudley pulled and stretched the cord while attaching the second hook to the metal cup. Significantly, Hendrickson stated that the cord's hook would be easier to bend when it was tip loaded because the steel in the cord's hook was not strong enough to withstand the force Dudley applied to it as he stretched the cord. Finally, Hendrickson testified that the cord's hook could release from the tarp's grommet if the pressure on the cord's hook was lessened. Hendrickson stated that the pressure on the hook would be reduced as Dudley let go of the stretched portion

_____

[4] Nor does Bungee attack the size of the jury's compensatory damage award.

4

of the cord, a matter on which Dudley testified. Clearly, this evidence would allow the jury to conclude that the accident occurred as Hendrickson described.[5] Accordingly, the magistrate judge did not err in denying Bungee's motion for judgment as a matter of law. Therefore, we affirm the award of compensatory damages.[6]

B.

We now turn to the issue of punitive damages. Bungee contends that, even assuming it was liable to Dudley under his design defect and failure to warn theories, the magistrate judge erred in refusing to grant it judgment as a matter of law on the issue of punitive damages. For Bungee to be entitled to a judgment as a matter of law on the issue of punitive damages, Bungee must show that Dudley is not entitled to punitive damages under both negligence claims. See Richards v. Michelin Tire Corp., 21 F.3d 1048, 1054-55 (11th Cir. 1994), cert. denied, 115 S. Ct. 902 (1995).

_____

[5] Bungee also argues that Dudley presented inconsistent testimony as to whether the cord's hook was tip loaded before the accident. Specifically, Bungee contends that Dudley testified the accident happened as the hook was attached to the tarp's grommet at its cradle (cradle loaded) and that Hendrickson testified the accident occurred when the hook was tip loaded. We believe Dudley's testimony was not inconsistent with Hendrickson's testimony. Although Dudley testified that the hook was initially cradle loaded, Dudley specifically stated that he did not know if the cord's hook changed positions after he placed it in the tarp's grommet. Further, Hendrickson testified that Dudley would not have noticed that the cord's hook shifted positions and became tip loaded because the conditions allowing the hook to become tip loaded are usually hidden from the user. Thus, Dudley's testimony did not contradict Hendrickson's testimony since it did not rule out the possibility that the cord's hook shifted from a cradle loaded position to a tip loaded position prior to the accident.

[6] Since we have affirmed Dudley's claim for compensatory damages on the negligence count, we find it unnecessary to address the question of whether the labelling on the cord's bag created any express warranties. See Compton v. Wyle Lab., 674 F.2d 206, 208 n.1 (4th Cir. 1982), the second claim on which the jury found Bungee liable.

5

Virginia law permits the recovery of punitive damages when the plaintiff proves the defendant's negligence was "so willful or wanton as to evince a conscious disregard of the rights of others." Booth v. Robertson, 374 S.E.2d 1, 3 (Va. 1988). "Willful and wanton negligence is acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." Griffin v. Shively, 315 S.E.2d 210, 213 (Va. 1984). See also Clohessy v. Weiler, 462 S.E.2d 94, 96 (Va. 1995) (quoting Griffin). Virginia law, however, precludes a finding of willful and wanton negligence when a defendant has shown some care for the safety of others. Philip Morris, Inc. v. Emerson, 368 S.E.2d 268, 283 (Va. 1988). We further note that Virginia law does not favor the awarding of punitive damages, reserving such awards only for the most egregious circumstances.[7] Id.

1.

Bungee claims that, assuming it was liable to Dudley under his failure to warn theory, its actions did not rise to the level of willful and wanton negligence because it exercised some care for the safety of others by placing a warning on the cord's bag. We agree.

The warning that Bungee placed on the bag shows that it exercised some care for the safety of others. Bungee's warning was as follows:

> 1. CORD IS STRETCHED TOO FAR. Do not use BUNGEE when stretch will be greater than Seventy Five (75%) Percent of its stretchable length. Stress on anchor points is increased many times as the cord approaches its

_____

[7] For examples of conduct creating a jury issue as to willful and wanton negligence, see Owens-Corning Fiberglas Corp. v. Watson, 413 S.E.2d 630, 642 (Va. 1992) (where for several decades the defendant actively concealed the danger that inhalation of dust from one of its products could cause lung disease); Griffin, 315 S.E.2d at 213 (where the defendant fired a gun in close proximity to a number of people in a relatively small room); Friedman v. Jordan, 184 S.E. 186, 187 (Va. 1936) (where the defendant chased and ran over a bicyclist with his car).

> maximum stretch limit, possibly resulting in failure of either fastener and dangerous rebound.

(J.A. 1325). This warning, at least in general terms, warned others of the dangers of stretching the cord too far. It is undisputed that Dudley had to stretch the cord over seventy-five percent of its stretchable length before the cord's hook would bend. Thus, since Bungee warned of the potential danger that injured Dudley, it exhibited some care for his safety. Because Bungee exercised some care for the safety of others, an award of punitive damages was not warranted under a failure to warn theory.[8] See Richards, 21 F.3d at 1059 (applying Alabama law) ("We have repeatedly held that the issue of punitive damages should not go to the jury when a manufacturer takes steps to warn the plaintiff of the potential danger that injured him; such acts bar a finding of wantonness."); Bhagvandoss v. Beiersdorf, Inc., 723 S.W.2d 392, 398 (Mo. 1987) (en banc) ("[I]nadequate communication cannot be equated to conscious disregard.").

2.

Bungee also claims that, assuming it was liable to Dudley under his negligent design theory, its actions did not rise to the level of willful or wanton negligence because there was insufficient evidence presented at trial to demonstrate that it knew the cord's design would cause injury to another. We agree.

The evidence presented shows that any negligence on the part of Bungee in designing its cords does not rise to the level of willful and wanton negligence because Bungee could not have been aware from its "knowledge of existing circumstances and conditions, that [the cord's design] probably would cause injury to another." Griffin, 315

---

[8] Dudley's reliance on our recent decision in Benedi v. McNeil-P.P.C., Inc., 66 F.3d 1378, 1383 (4th Cir. 1995), is misplaced. In Benedi, the plaintiff's liver was injured by acetaminophen toxicity, which is caused by combining acetaminophen with alcohol. Although the defendant had placed a warning on its product (Tylenol), the warning failed to warn, even in general terms, of the danger of combining alcohol and acetaminophen. Thus, unlike this case, the defendant showed no concern for the safety of those in the plaintiff's position.

S.E.2d at 213. In attempting to prove Bungee was aware that the design of its cords probably would cause injury to another, Dudley introduced evidence of two lawsuits filed against Bungee before Dudley's injury which contained allegations similar to the allegations in Dudley's complaint. Although prior lawsuits are relevant to prove wantonness, see Skil Corp. v. Lugsdin, 309 S.E.2d 921, 922-23 (Ga. Ct. App. 1983); 2A LOUIS R. FRUMER & MELVIN I. FRIEDMAN, PRODUCTS LIABILITY § 18.02[1], 18-29 (1995), one's "notice of prior injuries does not automatically create a jury question on wantonness." Richards, 21 F.3d at 1058.

In Richards, Michelin knew of four incidents involving an injury from the alleged defect (mismatches) in its tires out of some thirteen to fifteen million tires it sold. Since the evidence showed the incidence of mismatches was one in millions, the court found that a jury could not conclude that Michelin knew the mismatches were likely. Thus, it granted Michelin's motion for judgment as a matter of law on the plaintiff's punitive damages claim. Id. The court, however, noted that it may have reached a different result if Michelin had known of more mismatches. Id.

Bungee is in a position analogous to Michelin. Bungee offered evidence to show that it sold seven million cords[9] through Price Club for purposes of establishing that two lawsuits would not make it aware that any defect in its cords probably would cause injury to another. The magistrate judge, however, excluded this evidence as being irrelevant and, even if relevant, as being unduly prejudicial. This ruling was error because the evidence of the number of cords sold was relevant and probative as to whether Bungee should have known that its cords probably would cause injury to another. See 1 JOHN W. STRONG ET AL., MCCORMICK ON EVIDENCE § 200, 850-51 (4thed. 1992) ("A large number of cases recognize that lack of other accidents may be admissible to show . . . (3) the nonexistence of an unduly dangerous situation, or (4) want of knowledge (or of grounds to realize) the danger.") (footnotes omitted).

_____

[9] Although Bungee had actually sold over thirty million of these cords, it only proffered the fact it had sold seven million cords through Price Club.

8

We further note that Dudley did not introduce any other evidence showing that Bungee knew that the design of its cords probably would cause injury to another.**10** Since the evidence in this case shows the incidence of hook failure was literally one in millions, we find that Bungee could not have known from claims in two lawsuits that the design of its cords probably would cause injury to another. Because, under the circumstances, Bungee could not have known that its cord design probably would cause injury to another, an award of punitive damages was not warranted under a negligent design theory.

3.

Bungee has demonstrated that Dudley was not entitled to punitive damages under either a negligent design or negligent failure to warn theory.**11** Therefore, we must reverse the magistrate judge's denial of Bungee's motion for judgment as a matter of law on the issue of punitive damages.

III.

Bungee also challenges several of the magistrate judge's evidentiary rulings. We have reviewed these contentions and find none of the evidentiary rulings affected Bungee's substantial rights. See FED. R. CIV. P. 61. Accordingly, for all the foregoing reasons, the judgment entered by the magistrate judge is affirmed as to Dudley's claim for

_____

**10** Although Dudley introduced other evidence allegedly showing Bungee acted with willful and wanton negligence, none of the evidence was relevant to show that Bungee knew the design of its cords probably would cause injury to another.

**11** For Dudley to sustain an award of punitive damages on his breach of express warranty claim, he must show Bungee's alleged breach of the express warranty amounts to an independent, willful tort. See Kamlar Corp. v. Haley, 299 S.E.2d 514, 518 (Va. 1983). Although Dudley has argued that Bungee's statements, see supra note 2, created an express warranty, he has not argued that these statements constituted an independent, willful tort. Thus, an award of punitive damages is not warranted under a breach of express warranty theory.

compensatory damages and reversed as to Dudley's claim for punitive damages.

<u>AFFIRMED IN PART AND REVERSED IN PART</u>

10