■ JOHN SERBALIK, Appellant, v GENERAL MOTORS CORPORATION et al., Respondents. [667 NYS2d 503] —Yesawich Jr., J. Appeal from an order of the Supreme Court (Ferradino, J.), entered September 27, 1996 in Saratoga County, which granted defendants' motion for summary judgment dismissing the complaint.

In July 1984, plaintiff purchased a new, 1985 General Motors Cadillac Coupe DeVille, from defendant Queensbury Motors, Inc. (hereinafter Queensbury). Shortly after plaintiff took possession of the vehicle, it began exhibiting various mechanical problems, including stalling, bucking, surging, loss of power, emission of black smoke, and "explosions". Although the car was returned to the dealer—often needing to be towed—approximately 15 times for repairs, it apparently continued to malfunction, prompting plaintiff to commence this action charging defendants with breach of express and implied warranties under the Uniform Commercial Code and the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act (15 USC § 2301), fraud, unfair or deceptive selling practices, and negligent failure to warn and inspect. After issue was joined and discovery conducted, defendants moved for summary judgment dismissing the complaint. Supreme Court granted the motion and this appeal followed.

On appeal, as in Supreme Court, plaintiff raises no argu-

ment with respect to the dismissal of his warranty and negligence claims. As for the causes of action sounding in fraud and deceptive selling practices, plaintiff maintains that reversal is warranted because the record evidence, and particularly the affidavit of his expert engineer, raises questions of fact as to defendants' culpability. We disagree.

The statements plaintiff contends constituted material misrepresentations, which induced him to purchase the vehicle, are several comments allegedly made by Queensbury employees, to the effect that the car would provide "great traction, nice performance, nice riding, of course, and luxurious"; "would have excellent service and * * * would perform excellently"; and was "of high quality" and "practically maintenance free". In an attempt to show that these representations as to the vehicle's reliability and performance were made with knowledge of their falsity, plaintiff submitted a technical service bulletin issued by General Motors in 1985, relating to a problem that had been discovered in the particular model of engine used in plaintiff's vehicle. The bulletin explains that some of these engines "allow engine coolant to slowly leak into the crankcase", which in turn "could cause the engine oil to lose its lubricating ability", potentially resulting in "major engine damage", and outlines service procedures to reduce the risk of this occurring. Plaintiff also tendered the affidavit of an engineer, who opines that on the basis of his inspection of the engine of plaintiff's car, and his review of the technical service bulletins, he "will testify that General Motors, Cadillac Division knew that the said engine was defective when they sold it to [plaintiff]".

This affidavit, which is entirely conclusory and in no way indicates the factual basis for the expert's ultimate finding, is without probative value (see, Amatulli v Delhi Constr. Corp., 77 NY2d 525, 533; Gardner v Ethier, 173 AD2d 1002, 1003-1004). Moreover, there is no proof whatsoever that anyone at Queensbury was aware of the problem referred to in the technical bulletin when plaintiff purchased his car, which was several months before that bulletin was even issued (see, Monaco v New York Univ. Med. Ctr., 213 AD2d 167, 168, lv dismissed and denied 86 NY2d 882).

Plaintiff has also failed to proffer any evidence from which a factfinder could conclude that the salesperson's representations induced him to purchase the car. Significantly, plaintiff, a regular purchaser of Cadillac automobiles for 25 years, had been awaiting the release of this particular model for some time, had read about it in automotive magazines and, on the morn-

ing of his purchase, went to the dealership intending to order it. Under these circumstances, there is no basis for concluding that the salesperson's comments—which were not made in response to any particular question or concern expressed by plaintiff and were, in our view, nothing more than innocent " 'puffery' " (*Scaringe v Holstein*, 103 AD2d 880, 881)—induced the purchase.

Lastly, as Supreme Court noted, plaintiff has not demonstrated any link between the purported fraud and the damages he sustained (*see, Taschman v University of Rochester*, 199 AD2d 1016). Although he now claims that his expert would be prepared to testify, at trial, that the problems exhibited by the car were caused by the very same defect described in the technical bulletin, he inexplicably failed to lay bare his proof in this regard before Supreme Court (*see, Hasbrouck v City of Gloversville*, 102 AD2d 905, *affd* 63 NY2d 916).

Cardona, P. J., Crew III, White and Carpinello, JJ., concur. Ordered that the order is affirmed, with costs.