Ronald E. ANDERSON, Jr., Plaintiff,

v.

**BUNGEE INTERNATIONAL MAN-UFACTURING CORP. and The Home Depot, Inc., Defendants.**

**Bungee International Manufacturing Corp., Third–Party Plaintiff,**

v.

**Rite Industrial Corp., Third–Party Defendant.**

No. 96 CIV. 186(MGC).

United States District Court, S.D. New York.

April 7, 1999.

Steven J. Popkin, Brooklyn, New York, for plaintiff.

Jones Hirsch Connors & Bull P.C., New York City, for defendant Bungee International Manufacturing Corp., by Neil E. Higgins.

Simmons, Jannace & Stagg, L.L.P., East Meadow, New York, for defendant The Home Depot, Inc., by Kristen E. Zerrenner, Billie Jean Miller.

CEDARBAUM, District Judge.

Ronald E. Anderson, Jr. sues for serious injury to his eye caused by a rebounding hook on a stretchable cord manufactured by defendant Bungee International Manufacturing Corp. ("Bungee"). Anderson asserts that the design of Bungee cords is defective and unreasonably dangerous. Anderson moves for partial summary judgment based on the affirmative use of collateral estoppel to establish his claim of design defect. Bungee moves for summary judgment on Anderson's claims for breach of express warranty and duty to warn. Defendant The Home Depot, Inc. joins in Bungee's motion. For the reasons that follow, the motion of Bungee and The Home Depot is granted, and Anderson's motion is denied.

## UNDISPUTED FACTS

On February 27, 1995, Anderson, a self-employed construction contractor who resides in New York, went to a Home Depot store in Danbury, Connecticut to buy lumber for a construction project. (Anderson Dep. at 10–11, 109, 123–24.) It was raining, so Anderson decided to buy a tarp and stretch cords to cover the bed of his pickup truck. (*Id.* at 127.)

Anderson purchased a 23–piece "assortment pack" containing Bungee cords of varying diameters and lengths, the shortest being ten inches and the longest, 40 inches. (*Id.* at 135; Higgins Aff.[1], Ex. E.) Anderson testified at his deposition that the only printed material he read on the bag was the writing that pertained to the sizes of the cords. (Anderson Dep. at 136–37.) According to Anderson's subsequent affidavit submitted on these motions, he also noticed the words "Made in the U.S.A. We Make Our Products Where We Make Our Home[s]—America" and "Premium Quality" printed on the bag, as well as five drawings showing recommended uses for

1. "Higgins Aff." refers to the affidavit of Neil E. Higgins attached to Bungee's notice of

motion. Bungee also submitted an affidavit of Higgins as part of its reply papers.

the cords. (Anderson Aff. ¶ 4.) Anderson purchased the bag without speaking to any Home Depot employee. (Anderson Dep. at 139–40, 143.)

Anderson did not read the warning regarding proper use. (Anderson Dep. at 136; Anderson Aff. ¶ 4.) The warning occupies approximately 25 percent of the back of the Bungee package. "WARNING! WARNING! WARNING! WARNING!" is printed at the top in red letters. Below that appears the following: "Misuse of the Bungee cord can cause severe injury to the user.... AVOID INJURY. READ THE FOLLOWING FOR YOUR SAFETY." It warns that stretching the cord beyond 75 percent of its unstretched length can cause rebounding or failure of the cord or hook, "causing severe injury to an eye or other parts of the body." It also warns: "DO NOT stretch a BUNGEE toward or away from you to avoid being struck by a rebounding hook. Pull to one side. Keep your head and body out of the rebound path.... It's best to use protective eye wear when stretching, fastening or releasing hooks. **A rebounding hook is dangerous.**" Other than the Bungee logo, the words "Premium Quality" and the "Made in the U.S.A." emblem, the warning is the only printed material on the back of the package. (Higgins Aff., Ex. E; Enclosure to Higgins 6/19/98 Letter.)

Anderson loaded the lumber in the bed of his pickup truck and then began securing the tarp with the Bungee cords. (Anderson Dep. at 148–49, 153–71.) After securing the tarp on the driver's side and the front of the passenger's side of the bed with cords, Anderson reached the rear of the passenger's side. As he had at the other corners, Anderson put one hook into the eyelet of the tarp and stretched the cord over the utility box, which was seated on the wall of the truck. Anderson stretched the 13–inch cord to a length of 18 to 20 inches and hooked the other end in the drainage hole in the bottom of the utility box. As he began to stand up, the upper hook "distorted," became dislodged and hit him in the left eye. (*Id.* at 197–202, 211–15, 217.)

Anderson filed a complaint against Bungee and The Home Depot on January 12, 1996. The complaint alleges, *inter alia,* that the Bungee cord that struck Anderson was negligently and defectively designed and manufactured. It asserts claims under theories of negligence, including failure to warn (first and fifth causes of action), strict products liability, also including failure to warn (second cause of action), and breach of express and implied warranties of merchantability and fitness (third and fourth causes of action).

Subject matter jurisdiction is based on diversity of citizenship. 28 U.S.C. § 1332.

## DISCUSSION

A motion for summary judgment is granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The judge's role in summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding whether a genuine issue exists, a court must "examine the evidence in the light most favorable to the party opposing the motion, and resolve ambiguities and draw reasonable inferences against the moving party." *In re Chateaugay Corp.,* 10 F.3d 944, 957 (2d Cir.1993). Nonetheless, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 252, 106 S.Ct. 2505.

The parties agree that New York substantive law applies.

## I. Anderson's Motion for Collateral Estoppel

Based on the judgment in a prior action against Bungee, *Dudley v. Bungee*, Civ. No. 93–0021–C (W.D.Va.), Anderson moves for an order pursuant to Fed.R.Civ.P. 56 to estop Bungee from "denying at trial that it was not negligent [*sic*] in its production of its utility stretch cord product." (Notice of Motion.) At oral argument, Anderson's counsel clarified that Anderson is seeking affirmative collateral estoppel on the issue of the defectiveness of the Bungee cord's design. (Tr. 30.)

## A. The Prior Action

### 1. *Basic Facts*

In 1992, Larry Dudley was using a 40–inch Bungee cord to secure the flaps on a tarp. After the hooks were fastened at both ends of the cord, the first fastened hook bent, came loose and struck Dudley's eye. Dudley sued Bungee[2] in federal court in Virginia, claiming, *inter alia*, breach of express and implied warranties, negligence in designing the cord and negligence in failing to adequately warn of the cord's potential danger. *Dudley v. Bungee Int'l Mfg. Corp.*, 1996 WL 36977, at *1 (4th Cir. Jan. 31, 1996) (unpublished disp.).

A jury trial was held before a magistrate judge.

### 2. *Jury Charge and Verdict Form*

The jury was charged that one of the issues for it to determine was whether Bungee was "negligent," and if so, whether such negligence was a proximate cause of the plaintiff's injuries. The trial judge defined negligence as "the failure to use ordinary care." The judge instructed that a

manufacturer (1) has a duty to use ordinary care to design a product that is reasonably safe for its intended or reasonably foreseeable use, (2) has a duty to inspect the product to ensure that it is safe for its intended or reasonably foreseeable use, and (3) has a duty, if the product is potentially dangerous, to "give an adequate warning of this danger." The judge stated that if Bungee failed to perform any of these duties, it was negligent. (Popkin Aff., Ex. B (Trial Tr.) at 1192–94.)

The jury was given a verdict form which instructed it to find either for or against Dudley on the "claim of negligence." The verdict form did not ask the jury to specify on which theory of negligence its verdict rested. (Morin Aff., Ex. B; *Dudley*, 1996 WL 36977, at *1 n. 3.)

The jury returned a verdict against Bungee on Dudley's claims for breach of express warranty and negligence, but did not distinguish between Dudley's negligent design and negligent warning claims. *Dudley*, 1996 WL 36977, at *1.

### 3. *Fourth Circuit Decision*

On appeal, Bungee argued that there was insufficient evidence to allow a jury to find the cause of the accident, leaving the jury to speculate about whether Bungee's negligence was a proximate cause of Dudley's injuries. The Fourth Circuit specifically noted that Bungee did not attack the jury's finding that it was negligent either in designing the cord or in failing to warn of the cord's dangers. *Dudley*, 1996 WL 36977, at *1.

The Fourth Circuit affirmed the award of compensatory damages, holding that Dudley produced sufficient evidence to demonstrate the cause of the accident. It stated: "[Dudley] presented evidence that

---

2. Dudley sued Bungee's predecessor corporation, which was also called Bungee International Manufacturing Corporation but was incorporated in California. Bungee argues that it cannot be estopped by the judgment in the *Dudley* case because it was neither a party

nor privy to that action. *See Montana v. U.S.*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). Because Anderson's motion for collateral estoppel fails on other grounds, it is unnecessary to reach this issue.

the hook bent, released, and struck him in the eye because the cord's hook was not strong enough to withstand the force he applied to it as he stretched the cord." *Id.* at *2.

When it reached the issue of punitive damages, the Fourth Circuit stated that because the verdict was a general verdict, "[f]or Bungee to be entitled to a judgment as a matter of law on the issue of punitive damages, Bungee must show that Dudley is not entitled to punitive damages under both negligence claims." *Id.*

## B. Requirements for Collateral Estoppel (Issue Preclusion)

■ An issue determined in a prior federal proceeding is given preclusive effect in a subsequent federal proceeding[3] if the issue is identical to the one involved in the prior proceeding, the issue in the prior proceeding was actually litigated and actually decided, there was a full and fair opportunity for litigation in the prior proceeding, and the issue previously litigated was necessary to support a valid and final judgment on the merits. *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986).

## C. Identity of Issue

■ The issue that Anderson seeks to preclude is the defective design of the Bungee cord. In particular, Anderson argues that the common issue in both cases is the design of the hook.

The hooks used in the Dudley and Anderson accidents were different. The hook alleged to have failed in connection with Dudley's accident was model number 9012. (Morin Aff., Ex. B ¶ 6.) It has a design diameter of 3.9 millimeters, and the design diameter of its coil base is approximately 11 to 12 millimeters. (Davis Dep. at 443–44; Davis Aff. ¶ 22.) In contrast, the hook alleged to have failed in this action was model number 9006. (Davis Aff. ¶ 23.) It has a design diameter of 2.7 millimeters, and the design diameter of its coil base is approximately six millimeters. (*Id.*)

In addition, the cord in *Dudley* was 40 inches long. The cord in this case was 13 inches long. While Anderson argues that the issue both in *Dudley* and in this case is the design of the hook only, Dudley proffered evidence in the trial that related to the cord itself. In particular, there was evidence that the listed breaking point of the cord's sheath was 689 pounds, and the listed breaking point of the hook was 110 pounds when cradle-loaded. Dr. Hendrickson, Dudley's expert, also testified that the breaking point of the hook when tip-loaded was 48 to 50 pounds. (Morin Aff., Ex. D (Trial Tr.) at 276.) According to Dr. Hendrickson's testimony, one safety alternative available to Bungee was to design the sheath so that it would not be stronger than the hook. (*Id.* at 274–75.) His opinion was premised on the hook's and the sheath's relative strengths in that case.

In his reply papers, Anderson proffers an affidavit from Dr. Hendrickson, who was the expert in the *Dudley* action. (Popkin Reply Aff., Att.) Dr. Hendrickson opines that "[f]rom an engineering stand-

---

**3.** Anderson's brief cites cases applying both New York and federal law of collateral estoppel, while Bungee cites only federal cases. The Second Circuit has stated that "it is not altogether clear which law—state or federal— determines the effect of a judgment rendered in a diversity case on a subsequent diversity action." *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir.1997). However, the Second Circuit has opined that "federal law should determine the preclusive effect of a federal judgment, without regard to the basis of jurisdiction." *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 42 n. 3 (2d Cir.1986). District courts in this circuit have applied the federal law of collateral estoppel or res judicata in such cases. *See B.N.E. Swedbank, S.A. v. Banker*, 791 F.Supp. 1002, 1005–06 (S.D.N.Y. 1992); *Hoppe v. G.D. Searle & Co.*, 779 F.Supp. 1425, 1426 (S.D.N.Y.1991); *Phoenix Canada Oil Co. v. Texaco Inc.*, 749 F.Supp. 525, 533 (S.D.N.Y.1990); *Appel v. McNeil– P.P.C., Inc.*, No. CV 95–192, 1996 WL 705279 (E.D.N.Y. Nov.26, 1996); *but see In re N.Y. Asbestos Litig.*, 738 F.Supp. 66, 68 (E.D.N.Y. 1990).

point, the utility stretch cord that injured Mr. Dudley and the utility stretch cord that injured Mr. Anderson are identical products." (*Id.* ¶ 9.) Dr. Hendrickson states that "all dimensions for each different hook remain proportionately the same," but he does not state that the relative strengths of the sheaths and the hooks are identical. (*Id.* ¶¶ 7, 8.) Anderson also introduces evidence that the two hooks were made from a common raw material, had the same manufacturing process and underwent the same inspection process. However, Anderson must do more than show that the issues in the two cases are very similar. In order for Anderson to invoke the doctrine of collateral estoppel, he must show that the issues in the two proceedings are "truly identical." *Kramer v. Showa Denko K.K.*, 929 F.Supp. 733, 750 (S.D.N.Y.1996). Anderson fails to do so.

### D. Actual Litigation of the Issue

Of even greater importance, Anderson cannot show that the jury in *Dudley* necessarily decided that the Bungee cord hook was negligently or defectively designed.

The jury returned a general verdict for Dudley on the claim of negligence. There is no basis to determine whether the jury found Bungee liable for negligently failing to warn of a danger or for negligently designing the hook.

While Anderson also claims both failure to warn and negligent and defective design, the warning in *Dudley* was substantially different from the warning here. (Morin Aff., Ex. C.)

The Fourth Circuit decision does not help Anderson. The issue on appeal before the Fourth Circuit was whether there was sufficient evidence from which a reasonable fact finder could conclude that Bungee's negligence—not disputed on appeal—proximately caused the accident. The Fourth Circuit concluded that there was. This does not shed light on what the jury determined in finding Bungee negligent. Nor is it equivalent to the Fourth

Circuit holding that the hook was negligently designed. *See Appel v. McNeil–P.P.C., Inc.*, No. CV 95–192, 1996 WL 705279, at * 2 (E.D.N.Y. Nov.26, 1996).

### II. Bungee's Motion on the Failure to Warn Claim

Bungee moves for summary judgment dismissing Anderson's strict products liability claim to the extent it seeks recovery for failure to warn. Bungee argues that Anderson has failed to demonstrate that any inadequacy of the warning on the Bungee cord package proximately caused the injury to his eye. In particular, Bungee argues that because Anderson did not read the warning, the existing warning was not a proximate cause of the injury. Anderson counters that the adequacy of the warning, and the reasonableness of his failure to read the warning, are issues of fact for the jury. Anderson argues that each cord in the assortment pack should have had a separate warning tag on it. In support, he shows that when Bungee sells cords without packaging, it affixes the warning label directly to the cord. (Anderson Aff., Ex. C at 250.)

▮ Whether a warning is sufficient to alert the product user to potential hazards is generally a question of fact to be determined at trial and is not ordinarily susceptible to the drastic remedy of summary judgment. *Urena v. Biro Mfg. Co.*, 114 F.3d 359, 366 (2d Cir.1997) (applying New York law). Nonetheless, a plaintiff has the burden of proving that the absence of an adequate warning proximately caused his injury. *Banks v. Makita, U.S.A., Inc.*, 226 A.D.2d 659, 660, 641 N.Y.S.2d 875, 877 (2d Dep't 1996); *Belling v. Haugh's Pools, Ltd.*, 126 A.D.2d 958, 959, 511 N.Y.S.2d 732, 733 (4th Dep't 1987).

▮ Here, the essential element of causation is missing. Anderson admits that he did not read the warning on the package. He does not proffer any evidence, and he does not assert in his complaint or

his affidavit that he would have read the warning if it had been located in a different place. Any such inference from the record on these motions would be pure speculation. Because this is an issue on which Anderson has the burden of proof, Bungee's motion for summary judgment dismissing the failure to warn claim must be granted. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

Anderson relies on *Johnson v. Johnson Chemical Co.,* 183 A.D.2d 64, 588 N.Y.S.2d 607 (2d Dep't 1992). In that case, the plaintiff failed to read the warning on an insecticide "bomb." The warning on the can stated: "WARNING. USE ONLY ONE CAN PER ROOM. WARNING. ALL FLAMES, PILOT LIGHTS, BURNERS AND OVENS MUST BE TURNED OFF BEFORE USING THIS PRODUCT." The plaintiff activated a can in her kitchen without turning off her pilot lights. A fire ensued. The Second Department affirmed denial of summary judgment on the inadequate warning issue, stating: "A consumer such as [plaintiff] who, by her own admission, tends to ignore one sort of label, might pay heed to a different, more prominent or more dramatic label. The reasonableness of her behavior is for the jury to decide." *Id.* at 611. In that case, the plaintiff had testified at her deposition that she did not know what a pilot light was. Indeed, she was unaware that there was a pilot light on her stove. *Id.* at 608. Accordingly, she was able to show that even if she had read the warning, she would not have understood it and, thus, would not have avoided the accident. *See*

*also Arbaiza v. Delta Int'l Mach. Corp.,* No. CV 96–1224, 1998 WL 846773, at *7 (E.D.N.Y. Oct.5, 1998) (Spanish-reading plaintiff who did not read the warning label on a table saw "raised an issue of fact that the warning was inadequate when it was placed at knee height, was in small print and in English only").

These two unusual cases on which plaintiff relies are clearly distinguishable. Anderson is literate in the English language and does not point to any word in the warning on the package that he does not understand.

Bungee also argues that Anderson cannot sue on the warning because he had independent knowledge of the danger, *see Belling v. Haugh's Pools, Ltd.,* 126 A.D.2d 958, 511 N.Y.S.2d 732 (4th Dep't 1987), and because the danger was obvious, *see Bazerman v. Gardall Safe Corp.,* 203 A.D.2d 56, 609 N.Y.S.2d 610 (1st Dep't 1994). In view of Anderson's failure to read the warning, it is unnecessary to reach these issues.

### III. Bungee's Motion on Breach of Express Warranty Claim

The complaint alleges that the defendants "expressly warranted" that the Bungee cord was "safe and fit for the purposes for which it was intended and for which it was being used at the time of plaintiff's injury." (Compl.¶ 33.) In particular, Anderson alleges in his motion papers that the "Made in the U.S.A." and the "Premium Quality" labeling on the package, together with the five drawings showing recommended uses, caused him to believe that the cord was "a good, strong, top notch American-made product suitable for numerous uses." (Anderson Aff. ¶¶ 4, 6.) Anderson argues that "he was injured because the product . . . failed to live up to these standards." (Pl.Mem. at 6.)[4] Ac-

---

**4.** Anderson argues that the slogan "Made in the U.S.A." misrepresented the product's quality because the hooks were manufactured in Taiwan (although the product was assembled in the United States). Bungee argues

that under federal regulations, the product can be advertised as "Made in the U.S.A.", and that, in any event, any breach of this representation was not a proximate cause of Anderson's injury. Given the conclusion that

cording to Anderson's affidavit, the statements on the package "played some role in [his] decision to purchase this product." (Anderson Aff. ¶ 6.)

Bungee argues that the statement "Premium Quality" is puffery and not an express warranty. Bungee also argues that the slogan "Made in the U.S.A." is puffery to the extent it connotes that the goods are of superior quality.

■ The Uniform Commercial Code, as adopted in New York, provides that "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." N.Y.U.C.C. § 2–313(1)(b) (McKinney 1993). At a minimum, a plaintiff must show that there was an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase. *Schimmenti v. Ply Gem Indus., Inc.*, 156 A.D.2d 658, 659, 549 N.Y.S.2d 152, 154 (2d Dep't 1989).

Such an affirmation of fact must be distinguished from puffery. The Uniform Commercial Code provides that a "statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." N.Y.U.C.C. § 2–313(2) (McKinney 1993); *see also Independent Order of Foresters v. Donaldson, Lufkin & Jenrette Inc.*, 919 F.Supp. 149, 152 (S.D.N.Y.1996) ("opinions, puffery and other similar language [are] not actionable as a breach of warranty"). For instance, in *Hubbard v. General Motors Corp.*, the plaintiffs claimed that an automobile manufacturer breached an express warranty by outfitting a model of a car with a defective braking system. No. 95 Civ. 4362, 1996 WL 274018 (S.D.N.Y. May 22, 1996). Judge Schwartz held that print advertisements stating that the vehicle was "popular," "most dependable" and "Like a Rock" were puffery and did not create an express warranty: "[The statements] are general-

ized and exaggerated claims, which a reasonable consumer could not rely upon as statements of fact. Moreover, these statements make no reference whatsoever to the type or quality of the vehicles' braking system." *See also Serbalik v. General Motors Corp.*, 246 A.D.2d 724, 726, 667 N.Y.S.2d 503, 504 (3d Dep't 1998) (statement that automobile was "of high quality" and other similar statements were "nothing more than innocent 'puffery'"); *Scaringe v. Holstein*, 103 A.D.2d 880, 881, 477 N.Y.S.2d 903, 904 (3d Dep't 1984) (defendant's statement in advertisement that car was in "excellent condition" was "puffery").

■ In this case, Anderson has not made a showing that the statements "Premium Quality" and "Made in the USA," to the extent they connote superior quality, are descriptions of the goods and were a part of the basis of the bargain within the meaning of N.Y.U.C.C. § 2–313. The statements that the Bungee cords are of premium or superior quality are generalized statements of salesmanship and are indistinguishable from statements that this and other courts have held to be puffery under New York law. The statements in this case are not descriptions of particular characteristics of the goods and are therefore unlike the statements at issue in the cases cited by Anderson. *See Kates Millinery, Ltd. v. Benay–Albee Corp.*, 114 Misc.2d 230, 450 N.Y.S.2d 975 (Civ.Ct. 1982) (holding that seller breached express warranty that pressing machine was "one year old" and "in perfect condition," where the court found that machine was at least five years old); *Bernstein v. Sherman*, 130 Misc.2d 741, 497 N.Y.S.2d 298 (Justice Ct.1986) (representation by mechanic, in response to a specific question by plaintiff buyer, that frame of used automobile was in "good condition" constituted an express warranty); *Spiegel v. Saks 34th St.*, 43 Misc.2d 1065, 252 N.Y.S.2d 852 (Sup.Ct.

the slogan—to the extent it is a statement about the quality of the Bungee cords—is puffery, it is irrelevant for purposes of this

motion whether Bungee was justified in describing the goods as "Made in the U.S.A."

App.Term 1964) (statements in advertisement and on package that beauty cream was "safe," "clinically proven and absolutely safe" and "completely safe," and that cream "safely fades away" age spots, constituted an express warranty of safety).

## CONCLUSION

For the foregoing reasons, Anderson's motion for partial summary judgment on the ground of collateral estoppel is denied, and the motion of Bungee and The Home Depot for partial summary judgment dismissing the failure to warn and express warranty claims is granted.

SO ORDERED.