OPINION OF THE COURT
William F. O’Brien, III, J.
INTRODUCTION
This case, now before the court upon defendant Work’s motion for summary judgment or to dismiss plaintiffs’ complaint for failure to state a cause of action, is one of first impression in New York State. It involves Alcoholic Beverage Control Law § 65, concerning underage drinking, the public policy concerns and legislative intent in the drafting of such statute and whether a tavern owner may plead a cause of action in common-law trespass and fraud seeking civil damages from an underage patron who gains access to the tavern by presenting false identification. Defendant Work alleges that there is no issue of fact by which he may be held liable to the plaintiffs and that no legitimate cause of action has been set forth in the *807 plaintiffs’ complaint. Plaintiffs oppose defendant Work’s motion, alleging that they plead a cognizable common-law cause of action, and cross-move to amend their complaint.
STATEMENT OF THE FACTS
The relevant facts of this case are straightforward and largely not in dispute. Plaintiff OSJ, Inc. is a New York corporation doing business as The Old Stone Jug, a tavern located in Hamilton, New York (County of Madison). Plaintiff John M. Koen is the long-time president of the plaintiff corporation, owner of The Old Stone Jug and regularly employed by the tavern. The Old Stone Jug is licensed by the State of New York to offer alcoholic beverages for sale on its premises and for consumption of such alcoholic beverages on its premises by patrons over the age of 21 years. Defendant Work, at the time of the incidents giving rise to this action, was a 19-year-old student at a local college, and under the legal drinking age of 21 years.
On May 20, 1995, defendant Work was stopped by the Hamilton police early in the morning while walking back to campus in an intoxicated state. Defendant Work was brought to the police station on an unrelated matter and told the police officers that he was underage and had been drinking at The Old Stone Jug earlier in the evening. He further told the officers that he had gained access to The Old Stone Jug by use of a false New Hampshire driver’s license and that he purchased and was served alcoholic beverages by plaintiff Koen, in his capacity as an employee of The Old Stone Jug.
The police officers then accompanied defendant Work to The Old Stone Jug, where he identified plaintiff Koen as the person who had served him alcoholic beverages. Subsequently, plaintiff Koen was charged with the Penal Law crime of unlawfully dealing with a child (§ 260.20) for, inter alia, allegedly selling alcoholic beverages to defendant Work. In addition, alcoholic beverage administrative proceedings were commenced against the plaintiff corporation for the revocation of its liquor license because of the alleged sales of alcoholic beverages to defendant Work and several other underage college students.[1]
Defendant Work was never criminally charged for his actions on the evening and/or early morning in question. Defen *808 dant Work was granted immunity from prosecution by the Madison County District Attorney in exchange for his testimony against plaintiff Koen in the criminal proceedings and he testified accordingly in the criminal proceedings against plaintiff Koen. Ultimately, however, plaintiffs were successful in defending themselves in both the criminal and administrative proceedings and The Old Stone Jug retained its liquor license. All parties stipulated at oral argument that there are no pending criminal or administrative proceedings against plaintiffs concerning the defendants in this action.
Plaintiffs commenced this action by summons and complaint dated January 2, 1997. Plaintiffs allege for their first cause of action that defendant Work trespassed by interfering with plaintiffs’ possessory interest in the business premises and by unlawfully entering the premises by presenting fraudulent identification. For their second cause of action, plaintiffs allege that defendant Work fraudulently and intentionally deceived plaintiffs by his actions and that they justifiably relied on defendant Work’s presentation of false identification. Plaintiffs seek $250,000 in damages on each of their first and second causes of action alleging that, as a direct result of defendant Work’s trespass and fraud, they suffered investigation and possible suspension, cancellation and/or revocation of their liquor license, suffered criminal charges and prosecution, lost profits and incurred unnecessary legal expenses.[2]
In defendant Work’s motion, addressing the allegations in plaintiffs’ complaint, the gravamen of defendant Work’s argument is that plaintiffs seek damages against defendant Work (and the other underage drinkers plaintiffs commenced similar actions against) for providing testimony against plaintiffs in exchange for immunity in relation to the underlying incident. Defendant Work alleges that summary judgment or dismissal is appropriate in his favor because: (1) plaintiffs’ lawsuit constitutes a SLAPP suit (strategic lawsuit against public participation) pursuant to CPLR 3211 (g) and/or 3212 (h); (2) violations of the relevant provisions of the Alcoholic Beverage Control Law, by defendant Work, provide plaintiffs with no *809 basis for a civil cause of action; and (3) public policy precludes this sort of civil suit as against an adverse witness in a prosecution and as against an underage person whom the State Legislature was trying to protect by enacting such criminal and regulatory laws.
Plaintiffs, in opposition to defendant Work’s motion for summary judgment, allege that the instant action is not a SLAPP suit or an uncognizable cause of action but, rather, a legitimate legal proceeding which has a valid basis in fact and law, the purpose of which is to hold accountable defendant Work who engaged in unlawful and fraudulent conduct for his own benefit and amusement. Plaintiffs further allege that their intent is not to punish or deter individuals who cooperate in the prosecution of such criminal actions and that several of the six defendants in the similar companion action had declined to cooperate with the District Attorney against plaintiffs.
Plaintiffs submit, in support of their opposition to defendant Work’s motion, inter alia, an affidavit of Scott Wexler, the executive director of the Empire State Restaurant and Tavern Association and two affidavits of plaintiff John Koen. Executive director Wexler testifies in his affidavit that there is a significant problem among the Association’s members with enforcement of the legal drinking age because of false identifications presented by underage drinkers. Executive director Wexler proceeds to opine that the Legislature, by its recent amendments to sections 65-b and 65-c of the Alcoholic Beverage Control Law, has shown an intent to sanction underage individuals who acquire alcoholic beverages by the use of false identification and that, therefore, public policy supports the continuation of this form of litigation to sanction such underage drinkers.
In plaintiff Koen’s first affidavit, he alleges that in Madison County the law pertaining to the underage drinking age is selectively and inequitably enforced. Specifically, plaintiff Koen alleges that the Madison County police, District Attorney and courts stringently enforce the laws pertaining to the licensee who sells and distributes alcohol to underage persons who use false identification, while overlooking or granting total immunity to the minors who procured the alcohol through fraudulent means. Plaintiff Koen states that “I believe that the public policy argument in favor of such litigation is very strong. If the minor, and the minor’s family are aware that there are consequences to violating the law concerning the possession and use of false identification, perhaps compliance with the law would be greater.”
*810 Plaintiff Koen, in the second of his affidavits, states that at the time of the incident giving rise to this action, The Old Stone Jug restricted access to individuals over the age of 21 years and who presented documentary proof of their age. Plaintiff Koen further states that any underage persons on the premises were there without the knowledge or permission of the owners and that plaintiffs were justified in relying on the false identification presented by underage drinkers such as defendant Work. Finally, plaintiff Koen attaches to his affidavit, inter alia, what purport to be statements of the actual income of The Old Stone Jug for the relevant time period and alleges that the apparent substantial loss of business was “directly a result of the actions and reactions to the investigation and prosecution caused by the actions of defendant Work and others.”
Plaintiffs also cross-move for leave to serve an amended complaint pursuant to CPLR 3025. Plaintiffs allege that through the incorporation of different facts, the amended complaint will suffice to overcome defendant Work’s motion to dismiss for failure to state a cause of action. It is noteworthy that the causes of action in the amended complaint are essentially unchanged (common-law trespass and fraud) and that the elements of each cause of action have merely been “refined” (as plaintiffs allege) by the rewording of the allegations of the original complaint.
RELEVANT LAW/ANALYSIS
There are two principal issues to be determined upon defendant Work’s motion for summary judgment or to dismiss plaintiffs’ complaint as against him for failure to state a cause of action. First, as an initial matter, it must be determined whether plaintiffs’ cause of action constitutes a SLAPP suit pursuant to CPLR 3211 (g) and/or 3212 (h). Second, if plaintiffs’ suit is found not to constitute a SLAPP suit, and not accordingly dismissed, it must then be determined if plaintiffs allege cognizable causes of action for which relief may be awarded, i.e., whether plaintiffs are afforded such civil causes of action under the relevant statutory law and/or the common law given the relevant legislative intent and public policy concerns.
Defendant Work alleges that plaintiffs’ complaint should be dismissed as a SLAPP suit because plaintiff commenced this action only to punish and harass defendant Work for testifying against plaintiff Koen in criminal proceedings commenced by the Madison County District Attorney. Statutory authority for *811 the lower burden imposed on a defendant for dismissal of a SLAPP suit, an acronym for “strategic lawsuit against public participation”, arose in 1992 when subdivision (g) was added to CPLR 3211 and subdivision (h) was added to CPLR 3212. These subdivisions aim at deterring lawsuits commenced to thwart opposition, by public petition or participation, to the granting of public approval to an applicant for a permit, license or certificate, or like authorization from a public agency. Under either subdivision, upon the defendant’s motion, the burden is imposed on the plaintiff to establish that its claim has a “substantial basis” in fact or law, i.e., was not just commenced as means of intimidation, coercion or harassment.
If it is determined that the lawsuit was commenced solely for the purpose of intimidation, coercion or harassment, within the context of attempting to impact public petition or participation, compensatory or punitive damages may be assessed, including attorney’s fees. Professor Siegel explains in his Supplementary Practice Commentaries (McKinney’s Cons Laws of NY, Book 7B, CPLR C3211:73, 1999 Pocket Part, at 21) to CPLR 3211 the concerns which SLAPP provisions were created to address: “In our bureaucratic age, developers, property owners, and a variety of others who must secure public approval of a project from some public agency * * * are sometimes opposed before the agency by members of the public * * * Environmentalists are frequently the source of the opposition, for example. Whatever the source, these ‘opposers’ * * * don’t make the applicants very happy, and it has become increasingly common, in an effort to discourage such opposition, for the applicant, during or after the agency proceedings, to bring an action against the opposer for damages, perhaps for defamation, perhaps on other grounds.” Because of the specific character of lawsuits to which CPLR 3211 (g) and 3212 (h) are addressed, it is necessary to take a hard look at the terms and applicability of these subdivisions to the case at bar. If CPLR 3211 (g) and 3212 (h) are not applicable to the case at bar (an initial showing to be made by defendant Work), then plaintiffs do not have to meet the higher burden of establishing that their claims have a “substantial basis” in fact and law.
CPLR 3211 (g) and 3212 (h) both provide that the moving party must demonstrate that “the action, claim, cross claim or counterclaim subject to the motion is an action involving public petition and participation” (emphasis added). Civil Rights Law § 76-a (1) (a), containing the substantive portion of the SLAPP lawsuit package, defines an “action involving public pe *812 tition and participation” as an action, claim, cross claim or counterclaim for damages that is brought by a public applicant or permittee, and is materially related to any efforts of the defendant to report on, comment on, rule on, challenge, or oppose such application or permission. In light of this definition of “an action involving public petition and participation” and the specific character of lawsuits which these subdivisions aim to avoid, when juxtaposed with the character of the case at bar, the conclusion is compelled that this case does not fall into the category of cases which may be deemed a SLAPP suit according to the parameters of CPLR 3211 (g) and 3212 (h).
Defendant Work testified in exchange for immunity against prosecution in criminal proceedings against plaintiff Koen. Such criminal proceedings cannot be said to have been an “action involving public petition and participation” as such is contemplated within the SLAPP subdivisions. The criminal proceedings were initiated solely at the prosecutorial discretion of the Madison County District Attorney and had no direct effect on plaintiff The Old Stone Jug’s liquor license. Moreover, defendant Work’s testimony, although against the interests of plaintiffs, cannot be said to have been in opposition to plaintiffs’ application for a license or permission to have a license.
Thus, both the criminal proceedings and the administrative proceedings were commenced as a result of the allegation of the criminal wrongdoing of plaintiffs and the prosecutorial discretion of the Madison County District Attorney. It is not contemplated in the relevant subdivisions of CPLR 3211 and 3212 that such subdivisions should apply in a situation where an entity which is already licensed with the State is charged with criminal offenses and the defendant is compelled to testify adversely in exchange for immunity from prosecution. The record is devoid of any evidence that either the prosecution and administrative proceedings against the plaintiff or defendant Work’s decision to testify against plaintiffs arose in any way from defendant Work’s own desire or efforts to challenge the status of plaintiffs’ liquor license. Rather, the decision of defendant Work appears to be solely the rational result of choosing to testify in order to protect himself from criminal prosecution, not the sort of voluntary and concerned public petition and participation underlying SLAPP suit punishment. For these reasons, that part of defendant Work’s motion which seeks to dismiss plaintiffs’ complaint as a SLAPP suit pursuant to CPLR 3211 (g) and 3212 (h) is denied.
Defendant Work also moves for summary judgment or to dismiss plaintiffs’ complaint for failure to state a cause of ac *813 tion, alleging that plaintiffs’ alleged civil cause of action is not cognizable in that it is not expressly or impliedly allowed under the relevant provisions of the Alcoholic Beverage Control Law and precluded as against public policy and legislative intent regarding the control of alcoholic beverages. Although plaintiffs’ complaint (and proposed amended complaint) does not directly refer to Alcoholic Beverage Control Law § 65, plaintiffs’ pleadings may fairly be read to encompass a claim for a private right of action resulting from a violation of those provisions. In fact, despite plaintiffs’ assertion that they have alleged common-law causes of action, much of the language used in plaintiffs’ complaint mirrors the language contained in Alcoholic Beverage Control Law §§ 65 and 65-b.
Since Alcoholic Beverage Control Law § 65 does not make express provision for a civil right of action versus defendant Work (as is conceded by all parties), recovery may be had only if a private right of action may fairly be implied under such statutory scheme or if plaintiffs’ causes of action as pleaded (as common-law trespass and fraudulent misrepresentation) are cognizable as such and not inconsistent with or in contravention of public policy concerns and legislative intent regarding the control and regulation of the sale and distribution of alcoholic beverages and the prevention of underage drinking.
It has been explained by the New York Court of Appeals, in Burns Jackson Miller Summit & Spitzer v Lindner (59 NY2d 314, 325 [1983]), that in deciding whether a statute gives a cause of action to a person allegedly injured by its violation or whether its violation is rather intended to be punishable only as a public offense with no implied right of action: “[t]he far better course is for the Legislature to specify in the statute itself whether its provisions are exclusive and, if not, whether private litigants are intended to have a cause of action for violation of those provisions. Absent explicit legislative direction, however, it is for the courts to determine, in light of those provisions, particularly those relating to sanctions and enforcement, and their legislative history, and of existing common-law and statutory remedies, with which the legislative familiarity is presumed, what the Legislature intended [citations omitted].”
It has long been recognized in New York State that the State has the power to regulate every facet of the liquor industry (Matter of 17 Cameron St. Rest. Corp. v New York State Liq. Auth., 48 NY2d 509 [1979]), and that the regulation of the sale of alcoholic beverages is solely within the province of the State Legislature. (Matter of Cannon v City of Syracuse, 72 Misc 2d *814 1072 [1973].) In fact, the Appellate Division, Third Department, has recognized, that in New York State “[irrespective of intention * * * the law places squarely upon the licensee the risk of sales to minors.” (See, e.g., Matter of Ward v O’Connell, 280 App Div 1021, 1022 [3d Dept 1952].) It has further been stated, in People v Gar Bob Corp. (49 Misc 2d 88 [1966]), that in New York State there is no authority mitigating or abrogating the rule that: “the service or sale of an alcoholic beverage to a minor is malum prohibitum, and is not to be excused by ignorance or mistake of facts. In short, the one who immediately participates in the act does so at his peril. The harshness of the rule in such cases is justified by the enormity of the public hazard involved” (supra, at 89 [emphasis added]).
Plaintiffs allege, however, despite such repeated statements of the clear intent of the Legislature to place the onus of the burden (and the substantial costs for compliance) of underage drinking laws on the vendor of alcohol, that strict liability is no longer applicable in light of Alcoholic Beverage Control Law § 65 (4), which allows the licensed vendor an affirmative defense in the proceeding that the underage patron had produced a false identification and that the alcohol was sold in reliance upon such identification, and Alcoholic Beverage Control Law § 65-b, which makes it a violation for a person under the age of 21 years to present a false identification for the purpose of attempting to purchase an alcoholic beverage. Plaintiffs submit that these changes in the statute support their argument that such a civil right of action, as is presented in this action, now impliedly exists within Alcoholic Beverage Control Law § 65 or that plaintiffs otherwise should be allowed to proceed by way of a common-law trespass or fraudulent misrepresentation action as is pleaded in plaintiffs’ complaint.
Plaintiffs, however, misinterpret these provisions as a change or shift in public policy underlying Alcoholic Beverage Control Law § 65, rather than as a calculated legislative adaptation to the realities of the challenges of monitoring underage drinking, and request this court to step outside of its judicial interpretive function and create a previously unrecognized cause of action based upon public policy arguments. Plaintiffs correctly recognize in their supporting papers that the presentation of false identification by underage persons to obtain alcoholic beverages is a prevalent problem.
The forum for plaintiffs’ effort to foster a legal avenue by which licensed vendors, such as plaintiffs, may recoup alleged lost income and legal fees from underage drinkers who have *815 presented false identification in contravention of Alcoholic Beverage Control Law § 65-b is more appropriately the State Legislature rather than this court, which is without the authority to expand the limited sanctions put in place by the Legislature in the form of a previously unrecognized civil right of action.
The State Legislature clearly recognized the problems presented by false identification as evidenced by their inclusion of such provisions in Alcoholic Beverage Control Law §§ 65 and 65-b. Nowhere in the Alcoholic Beverage Control Law is it implied, however, that the presentation of false identification by an underage person should result in the creation of a private civil right of action for the licensed vendor against the underage drinker. The Legislature is presumed to be well versed in the relevant and existing common-law and statutory remedies and the conclusion must be drawn, in light of the public policies underlying the Alcoholic Beverage Control Law, from its limitation to a small fine and community service as the sanction to underage persons presenting false identification, that the creation of a civil cause of action was not intended.
In fact, in this context, the very existence of limited legislatively created sanctions against an underage drinker for obtaining alcoholic beverages by the use of fraudulent identification and the affirmative defense now available to an accused licensed vendor constitutes the strongest argument against expanding these legislatively mandated adaptations, by the creation of a private right of action against the underage drinker, which would essentially shift the monitoring costs of compliance from the licensed vendee — who is in the best position and has the greatest incentive to ensure compliance with these laws — to the underage drinker in contravention of the clear purpose of the statutory scheme.[3]
*816 Also significant to the determination herein is that, given the goals and policies underlying the Alcoholic Beverage Control Law, as expounded in both the statute and supporting case law, the plaintiffs are not part of the class for whose particular benefit the statute was enacted. Among the protected classes are innocent third parties who may fall victim to injuries caused by intoxicated persons and underage drinkers and intoxicated persons who are deemed by the Legislature to necessitate protection, whether because of age or impairment, from the consumption or over-consumption of alcohol.
In making the provision of alcohol to individuals under the legal purchase age a violation, the Legislature plainly intended to create a deterrent for those who might, intentionally or carelessly, engage in the proscribed conduct. Recognition of a private right of action in these circumstances would not promote the legislative purposes of the Alcoholic Beverage Control Law and would be wholly inconsistent with the legislative scheme and public policies relevant to preventing underage drinking.
Plaintiffs allege that even if their causes of action are not implied in Alcoholic Beverage Control Law § 65, as has now been determined herein, they still have alleged a proper common-law cause of action for trespass and fraudulent misrepresentation.[4] Plaintiffs’ alleged causes of action, however, fail as a matter of law on the elements necessary to establish either a common-law trespass or fraudulent misrepresentation even assuming arguendo that the aforementioned public policy concerns could be circumvented by contorting facts to assimilate elements of common-law torts.
Plaintiffs allege in their complaint that defendant Work “knowingly, intentionally and unlawfully interfered with the plaintiffs’ possessory interest in the business premises by unlawfully entering the premises.” Plaintiffs allege for damages, however, that they suffered “investigation and possible *817 suspension, cancellation and/or revocation of their license issued by the State of New York to sell alcoholic beverages for on-premises consumption, a valuable property right; incurred legal expenses; lost profits; and suffered other damages.” The property onto which defendant Work allegedly entered, i.e., the physical business premises, is wholly separate and distinct from the alleged property right which was interfered with, i.e., a nonphysical proprietary interest in the form of their liquor license, a State-provided privilege.
It is well-settled law that alleged damages suffered by a party alleging trespass are not recoverable if they do not flow as a natural consequence of the alleged trespass. (Costlow v Cusimano, 34 AD2d 196 [4th Dept 1970].) Because the only property to which defendant Work obtained access was the physical business premises (and no damage is alleged to the physical premises), and defendant Work was powerless to affect any interest that plaintiffs had in their wholly separate liquor license (only the State Liquor Authority could affect plaintiffs’ proprietary interest in the license by their unilateral action), and since it is undisputed that plaintiffs’ property rights in their liquor license remain intact and all administrative proceedings have concluded, plaintiffs have failed to sufficiently allege the necessary proof of causation as a matter of law to support a cause of action for common-law trespass.
The record contains no evidence that the criminal proceedings commenced by the police or the administrative proceedings commenced by the State Liquor Authority flowed as a natural consequence of defendant Work’s act (his act in unlawfully entering plaintiffs’ business premises, not his act of agreeing to testify in the criminal proceedings) or that defendant Work intended to affect plaintiffs’ interest in their liquor license rather than simply gaining access to the physical premises.
For the same reasons, regarding plaintiffs’ causes of action for fraudulent misrepresentation, plaintiffs have also failed to adduce evidence sufficient to support a prima facie case of the elements of the alleged common-law tort. Plaintiffs have failed to establish the requisite causal nexus between the alleged fraudulent misrepresentation of defendant Work and the alleged damages (which are identical to the damages in the trespass cause of action). The record is devoid of any evidence establishing a link between defendant Work’s fraudulent misrepresentations and the alleged damages that plaintiffs suffered. (Serbalik v General Motors Corp., 246 AD2d 724 [3d Dept 1998]; Taschman v University of Rochester, 199 AD2d 1016 [4th Dept 1993].)
*818 The record is devoid of any evidence that the State Liquor Authority commenced proceedings against plaintiffs because of the incident involving defendant Work obtaining alcoholic beverages from plaintiffs with a false identification. There is nothing in the record establishing that such proceedings were not commenced because of different incidents regarding different underage drinkers (and there is ample evidence in the record that numerous other underage drinkers were arrested at The Old Stone Jug around the time that defendant Work was drinking there). For these reasons, the damages claimed by plaintiffs as being caused by defendant Work’s actions are not supported by the record and are too speculative to justify a finding of a prima facie case.
Even if plaintiffs established sufficient common-law claims for trespass and fraudulent misrepresentation, compelling constraints on the power of the judiciary mandate the dismissal of plaintiffs’ complaint. The Legislature holds the authority, and the right as mandated by the electorate, to select and define the methods to be implemented in effectuating its basic legislative goals, as well as identifying and prioritizing those goals. Thus, regardless of apparent consistencies with legislative intent when elements of certain common-law causes of action are mutated, plaintiffs’ proffered and previously unrecognized common-law right of action cannot herein be judicially sanctioned as it is incompatible with the limited enforcement mechanism chosen by the Legislature and with the priorities for fostering compliance chosen by the Legislature. (Sheehy v Big Flats Community Day, 73 NY2d 629 [1989]; CPC Intl. v McKesson Corp., 70 NY2d 268 [1987].) Plaintiffs offer no compelling reason why this court is empowered or obligated to act in the stead of the Legislature and usurp what has been recognized as a legislative function.
Accordingly, defendant Work’s motion to dismiss plaintiffs’ complaint as against him is granted in its entirety and plaintiffs’ motion to amend their complaint is hereby denied in all respects.

. It is noteworthy that as against codefendant Smith, and against six other underage college students also in a separate action, plaintiffs have alleged identical causes of action and sought identical damages. Plaintiffs allege in their complaints that codefendant Smith and the other six students allegedly gained access to The Old Stone Jug by the use of false identification *808 and allegedly committed the common-law torts of trespass and fraudulent misrepresentation.

. Because all parties have stipulated that all criminal and administrative proceedings have concluded, being resolved in plaintiffs’ favor (i.e., plaintiff Old Stone Jug’s liquor license was not suspended, cancelled or revoked), the only alleged damages which remain relevant are lost profits and incurred legal expenses.

. Illustrative of this point is that it is well established that violation of Alcoholic Beverage Control Law § 65, prohibiting the sale of alcoholic beverage to any visibly intoxicated person, does not create a private right of action for injured third parties. (Sherman v Robinson, 80 NY2d 483, 487 [1992]; Dodge v Victory Mkts., 199 AD2d 917, 919 [3d Dept 1993].) However, the Legislature expressly created such a private right of action in General Obligations Law §§ 11-100 and 11-101. Similarly, in Alcoholic Beverage Control Law § 65-b, the legislative commentary and applicable case law express no intention to create a private right of action in favor of a licensed vendor and the General Obligations Law makes no provision for such a private right of action. The Legislature was free to create a right of action in favor of licensed vendors, such as plaintiffs, and its silence must be interpreted as an intention that no right shall exist.

. Although this is a case of first impression in New York, several other States have decided similar cases regarding licensed vendors of alcoholic beverages commencing private civil actions against underage drinkers who misrepresented their age and obtained alcoholic beverages. (See, Sanctuary, Inc. v Smith, 12 Kan App 2d 38, 733 P2d 839 [1987]; Faces, Inc. v Kennedy, 185 NJ Super 113, 447 A2d 592 [1981]; Ray’s Liqs. v Newland, 52 Ill App 3d 680, 367 NE2d 982 [1977].) While not determinative here, the analyses employed in reaching the results therein, that public policy and legislative intent precluded such actions, are probative on the similar question in this case given the common public policy goals and direction taken by the respective State Legislatures.