

# In the
# Missouri Court of Appeals
# Western District

ROBERT HURST,

        Respondent,

v.

NISSAN NORTH AMERICA, INC.,

        Appellant.

WD78665

OPINION FILED:

March 22, 2016

---

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Jack Richard Grate, Judge**

**Before Division Three:**
**Joseph M. Ellis, Sr. J. Presiding,[1] Thomas H. Newton, and James Edward Welsh, JJ.**

When certain Infiniti FX vehicles developed dashboard bubbling, Robert Hurst, on behalf of himself and others similarly situated, filed a second amended petition seeking damages under the Missouri Merchandising Practices Act (MMPA) and seeking certification of a class action lawsuit against Nissan North America, Inc. (Nissan). The circuit court certified the class, which included all persons in the State of Missouri who purchased in Missouri an Infiniti FX35 or FX45 model years 2003 through 2008 through the distribution system of Nissan and who owned the vehicle on December 14, 2009, with the dashboard installed as original manufacturer's

---

[1] Judge Ellis retired as an active member of the court on March 1, 2016, after oral argument in this case. He has been assigned by the Chief Justice to participate in this decision as a Senior Judge.

equipment. After a jury trial, the jury returned a verdict awarding $2,000 in damages to each class plaintiff. After notice of the verdict was provided to potential class members, potential class members submitted claims. The circuit court determined that 326 class members established claims and were entitled to payment of $2,000 each per the jury's verdict. The circuit court also awarded class plaintiffs $1,819,785 in attorney's fees. Nissan moved for judgment notwithstanding the verdict, or in in the alternative, a new trial and asked that the circuit court decertify the class. The circuit court denied those motions. Nissan appeals.

In its appeal, Nissan asserts nine points on appeal. It claims the circuit court erred: (1) in denying its motions for directed verdict and JNOV because Hurst failed to make a submissible case under the MMPA in that the alleged misrepresentations were not actionable statements of fact but were merely inactionable puffery; (2) in denying its motions for directed verdict and JNOV because Hurst failed to make a submissible case under the MMPA in that Hurst failed to establish any ascertainable loss by the class; (3) in denying its motion for new trial because the circuit court improperly and prejudicially excluded the testimony of Hurst's expert, Dr. Michael Kelsay; (4) in denying its motion for new trial because the circuit court improperly and prejudicially permitted testimony by numerous witnesses who were not members of the class; (5) in denying its motion for new trial because the circuit court improperly and prejudicially permitted testimony by individual owners concerning alleged reductions in the value of their vehicles; (6) in denying its motion for new trial because the verdict director was an impermissible roving commission; (7) in certifying the class in the first instance and denying its motion to decertify after trial because the evidence at trial confirmed that common issues of fact and law did not substantially predominate over individual ones; (8) in certifying the class in the first instance and denying its motion to decertify after trial because uninjured individuals

2

impermissibly dominated the class; and (9) in awarding attorney's fees if this court decides that the circuit court erred in denying its motion for JNOV, motion for new trial, and motion to decertify the class because the MMPA authorizes attorney's fees for a prevailing party only. Because we find that the first point is dispositive of this appeal, we need not address the remaining points except for the circuit court's award of attorney's fees. The alleged misrepresentations of facts made by Nissan were not actionable statements of fact under the MMPA. We, therefore, reverse the circuit court's judgment and remand for the circuit court to enter a judgment notwithstanding the verdict in favor of Nissan.

Viewing the evidence in the light most favorable to the verdict, the record established that the Infiniti is an automobile brand manufactured by Nissan. Beginning in 2003, one of Infiniti's offerings was a "crossover" sport utility vehicle called the FX.[2] Nissan provided a warranty with every new FX.[3]

In September 2005, Nissan began to receive warranty claims based on a bubbling issue in dashboard of FX vehicles.[4] In response, Nissan investigated the problem, developed several countermeasures to fix the dashboards, and offered a voluntary warranty extension and reimbursement program. In early 2010, Nissan sent letters to Infiniti FX owners advising them about the extended warranty. The letter said:

> On behalf of everyone at Infiniti thank you for choosing to drive an Infiniti FX. Infiniti strives to provide an exceptional ownership experience. With this in mind

---

[2]The FX line included the FX 35 and FX45. The first generation FX, at issue in this case, ceased production after 2008.

[3]The Standard Infiniti Limited Warranty provided: "4-year/60,000-mile Basic coverage, 5-year/50,000-mile Emission Control coverage, 6-year/70,000-mile Powertrain coverage, 7-year/unlimited-mileage Corrosion coverage, 10-year/unlimited-mileage Seat Belt Warranty[.]"

[4]The problem did not arise in all FX vehicles.

3

we are announcing a Customer Satisfaction Campaign related to the dash in your vehicle. We have become aware of a cosmetic issue with the dash material on some 2003 to 2008 Infiniti FX vehicles where the material may start bubbling from heat and humidity. Please be aware this issue with the dash material is strictly cosmetic and does not present a safety issue.

This Customer Satisfaction Program extends the limited warranty on the dash to 8 years with unlimited mileage. This warranty extension on the dash is effective immediately and requires no action on your part. All other warranty terms, limitations and conditions otherwise apply. This extended warranty is also fully transferable to future owners of your vehicle.

As part of this program Infiniti will also reimburse customers who have previously paid to repair or replace their dash, if the repairs would have been covered within the new extended warranty period. Even if you no longer own your FX we will reimburse you for past dash repairs that would have been covered under this extension of the warranty.

On December 14, 2009, five named plaintiffs filed a petition in the Circuit Court of Jackson County seeking damages based upon breach of express warranty, breach of implied warranty of merchantability, and violations of the MMPA, and seeking certification of a class action lawsuit against Nissan due to the bubbling of the dashboard. The circuit court certified the class, and Nissan, pursuant to Rule 52.08(f), filed a petition with this court seeking permission to appeal the circuit court's order granting the class action certification. We granted permission and affirmed the circuit court's order granting class certification of the MMPA claims[5] but reversed as

---

[5]In affirming the circuit court's order granting class certification of the MMPA claims, this court issued this caveat:

> Because the facts are not fully developed, we cannot at this point say that it was an abuse of discretion for the trial court to certify the class in view of the significant number of common issues that exist and could have been perceived to predominate over individual ones. Again, we are reminded that the trial court has authority to alter the class definition, and even to revoke certifications as the matter proceeds, if the trial court determines that the commonalities do not predominate, meaning class treatment is a superior means of adjudication.

*Hope*, 353 S.W.3d at 85.

to the certification of the claims for breach of express warranty and breach of implied warranty of merchantability. *Hope v. Nissan North Am., Inc.*, 353 S.W.3d 68, 92 (Mo. App. 2011).

On remand to the circuit court, Hurst on behalf of himself and others similarly situated, filed a second amended petition seeking damages under the MMPA and seeking certification of a class action lawsuit against Nissan. The circuit court certified the class, which included all persons in the State of Missouri who purchased in Missouri an Infiniti FX35 or FX45 model years 2003 through 2008 through the distribution system of Nissan and who owned the vehicle on December 14, 2009, with the dashboard installed as original manufacturer's equipment. In his second amended petition, Hurst asserted that the defect in the dashboard of the Infiniti FX diminished the value of the vehicle, regardless of whether or not the defect actually manifested in any particular vehicle. Hurst claimed that the existence of the defect placed a stigma upon the vehicle that reduced the marketability and resale value of the vehicle. Hurst claimed that Nissan violated the MMPA by making representations regarding the Infiniti FX vehicle that were not in accord with the facts regarding the quality of the vehicle or by making representations regarding the Infiniti FX that tended to create a false impression regarding the quality of the vehicle.[6]

At trial, the Infiniti FX's marketing brochures became the focus of Hurst's misrepresentation claims. Class member Susana Oelke testified at trial and said that she learned about the FX from commercials and from marketing materials she received at the dealership. Based upon the marketing materials, Oelke said she expected the FX to be a "higher quality" vehicle and did not expect the dashboard to bubble. After she purchased the vehicle, the

---

[6]In his second amended petition, Hurst made other claims of violations of the MMPA, but he abandoned those claims.

5

dashboard bubbled. Oelke said that she did not view the dashboard as being either "luxurious" or "durable."

Class Member Shirley McMillan testified that she saw commercials and obtained brochures from an Infiniti dealer prior to purchasing her FX. She said that the advertising gave her the impression that that FX was an "upscale" vehicle. McMillan said that the brochures depicted and discussed the interior of the FX and gave the impression that it was an "upscale" vehicle. She said that her experience with the FX's quality was not consistent with the way that it was depicted in the marketing materials and that, if the marketing materials had accurately depicted the FX's quality, she would not have purchased it.

Class member Burt Twibell testified that he reviewed a brochure for the FX prior to purchasing it. He said that he purchased the FX based upon his impression that the FX was a "luxury" vehicle. Twibell said that the FX dashboard did not live up to his expectations regarding a premium, luxury vehicle.

Hurst's videotaped deposition testimony was played for the jury at trial. Hurst testified that his FX was not of high quality because he did not expect the dashboard to bubble. He also said that, based upon the brochures provided to him by the dealership prior to the purchase of his vehicle, he was expecting to buy "premium automotive machinery" and that he is dissatisfied with the bubbling dashboard.

Non-class member Ginger Bridger testified at trial that she had viewed brochures and information on Infiniti's website before purchasing her FX. She said that she received her brochures directly from Infiniti and that those materials emphasized that the FX was "a high quality vehicle." Bridger said that those materials influenced her purchase decision and that she purchased the FX because she viewed it as a "high quality" vehicle with "durability." After she

6

purchased the vehicle, her dashboard bubbled.  She said that, based upon the marketing materials she reviewed, she would not have expected dashboard bubbling.  Bridger stated that the bubbling made her vehicle look cheap.

The videotaped deposition testimony of Nathan Lyst, senior manager for Infiniti marketing communications, was played for the jury at trial.  Lyst testified regarding the marketing campaign for the FX.  Lyst said that the marketing for the FX was intended to convey the overall theme that the FX was "a premium sports utility vehicle."

Concerning the brochure for the 2003 FX, Lyst said that the brochure "in its totality" was "meant to convey an overall image for the vehicle."  He testified that the brochure was intended to provide the foundation for an overall image of the FX and that the way the FX looked was important to the overall marketing campaign because Nissan was trying to sell a particular "design esthetic."  Lyst said that Nissan was trying to convey the overall image of a "very refined" vehicle and that the idea of a premium vehicle, including the promise of "premium automotive machinery," was a recurrent theme in the FX marketing.  He further testified that Nissan was trying to convey that the premium features of the FX were a large part of the ownership experience.

Lyst also testified regarding the brochures for the 2004-2008 FX.  According to Lyst, the overall image of the FX conveyed in the 2003-2008 marketing materials did not change.  He said that "the same message—the same words are being used consistently" and that this was true "through the life cycle of the vehicle."  Lyst said that "a dashboard that bubbles up when exposed to heat and humidity" would not "meet the threshold for refinement that [Nissan was] trying to convey" in the advertising brochures.

During trial, samples of the FX's marketing materials were shown to the jury, with specific aspects pointed out by counsel. Those materials made the following representations:

The FX is a "premium" vehicle and a "leader in style."

"Since its introduction, the FX has been a leader in style."

The FX "embodies the Infiniti philosophy of combining design and performance in one luxurious package."

The FX has a "High Tech Interior Accentuated with Luxurious Comfort."

The FX encompasses "the comfort and amenities of a luxury car."

"The FX45 and FX35 epitomize Infiniti's most advanced thinking—with dramatic styling."

The FX provides a "unique blend of uncompromising style and luxury."

The FX provides "features that are both elegant and intelligent."

The FX has "[a]n ergonomically designed, sport-inspired cockpit [that] embraces the driver and elevates the driving experience."

The FX's appearance is so impressive that "you can't tear your eyes from it."

The FX was "[d]esigned to attract a glance. That evolves into a stare. And provokes a desire."

The FX was a "premium" vehicle with a "premium automotive experience."

Nissan had a "commitment to offer a superior product representing excellent value" and "to ensure total satisfaction for our customers."

"Refinement knows no borders in the Infiniti FX."

In the FX, there was "room for everything except compromise."

The 2003-2008 Infiniti FX brochures were admitted into evidence. The 2003-2005 brochures showed views of the dashboard. The brochures indicated that the FX contained "premium automotive machinery" and stated that Nissan's commitment was "[t]o offer a superior

8

product representing excellent value." The brochures further stated that Nissan was "completely committed to ensuring total satisfaction for our customers." The 2006-2008 brochures also showed views of the dashboard. The brochures indicated that the materials used in the interior were an important component of the vehicle and stated that "[t]he FX beckons your touch as powerfully as it attracts attention."

At the close of plaintiff's case and at the close of all the evidence, Nissan filed motions for directed verdict asserting that Hurst failed to make a submissible case on his MMPA claim. The circuit court denied those motions.

The jury returned a verdict in favor of the Class Plaintiffs holding Nissan liable under the MMPA in the amount of $2000 for each of the Class Plaintiffs. After trial, Nissan filed motions for judgment notwithstanding the verdict, for new trial, and to decertify the class. The circuit court denied the motions. Nissan appeals.

In its first point on appeal, Nissan asserts that the circuit court erred in denying its motions for directed verdict and judgment notwithstanding the verdict because Hurst failed to make a submissible case under the MMPA. Nissan claims that Hurst failed to show that Nissan made an actionable misrepresentation in connection with the FX's advertising. Nissan argues that the statements relied upon by plaintiff were not actionable statements of fact as required by the MMPA. We agree.

"Because a directed verdict or judgment notwithstanding the verdict should only be granted where the plaintiff fails to make a submissible case, our review is restricted to determining whether the plaintiff made a submissible case." *Kelly v. State Farm Mut. Auto. Ins. Co.*, 218 S.W.3d 517, 520 (Mo. App. 2007). "To make a submissible case, a plaintiff must present substantial evidence for every fact essential to liability. Substantial evidence is that

9

which, if true, has probative force upon the issues, and from which the trier of fact can reasonably decide the case." *Blue v. Harrah's N. Kansas City, LLC*, 170 S.W.3d 466, 472 (Mo. App. 2005) (citation and internal quotation marks omitted). In reviewing for a submissible case, we accept all evidence and reasonable inferences favorable to the verdict and disregard contrary evidence. *Kelly*, 218 S.W.3d at 521. "[We] will reverse the jury's verdict for insufficient evidence only where there is a 'complete absence of probative fact' to support the jury's conclusion." *Seitz v. Lemay Bank and Trust Co.*, 959 S.W.2d 458, 461 (Mo. banc 1998) (footnote omitted).

The MMPA makes unlawful "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce[.]" § 407.020.1, RSMo Supp. 2014. The MMPA bars an "assertion that is not in accord with the facts," 15 CSR 60-9.070(1), and deceptions in advertising that have a tendency "to create a false impression." 15 CSR 60-9.020(1). Hurst, on behalf of the class, submitted his MMPA claim to the jury claiming that, in connection with the advertising of the Infiniti FX vehicle, Nissan either:

1. Made representations regarding the Infiniti FX vehicle that were not in accord with the facts regarding the quality of the vehicle; or

2. Made representations regarding the Infiniti FX vehicle that tended to create a false impression regarding the quality of the vehicle.

Many statements made in advertising, however, are not actionable statements of fact but are merely the "'[p]uffing of wares, sales propaganda, [or] other expression of opinion[.]'" *Constance v. B.B.C. Dev. Co.*, 25 S.W.3d 571, 587 (Mo. App. 2000) (quoting *Clark v. Olson*, 726 S.W.2d 718, 720 (Mo. banc 1987)). "A seller may puff his wares or express his opinion about

10

the quality and value of his goods even to the point of exaggeration without incurring" liability. *Carpenter v. Chrysler Corp.*, 853 S.W.2d 346, 358 (Mo. App. 1993). Indeed, "[p]uffing of wares, sales propaganda, and other expressions of opinion are common, are permitted, and should be expected." *Clark*, 726 S.W.2d at 720. "'The generally recognized distinction between statements of fact and opinion is that whatever is susceptible of exact knowledge is a matter of fact, while that not susceptible is generally regarded as an expression of opinion.'" *Constance*, 25 S.W.3d at 587 (quoting *Reis v. Peabody Coal Co.*, 997 S.W.2d 49, 65 (Mo. App. 1999)).

As the Eighth Circuit Court of Appeals explained, puffing of wares and expressions of opinion are mutually exclusive from statements of fact. *Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 391 (2004). According to the Eighth Circuit:

> A factual claim is a statement that "(1) admits of being adjudged true or false in a way that (2) admits of empirical verification." To be actionable, the statement must be a "specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." Generally, opinions are not actionable.
>
> . . . If a statement is a specific, measurable claim or can be reasonably interpreted as being a factual claim, i.e., one capable of verification, the statement is one of fact. Conversely, if the statement is not specific and measurable, and cannot be reasonably interpreted as providing a benchmark by which the veracity of the statement can be ascertained, the statement constitutes puffery.

*Id.* (citations omitted).

Thus, a pasta maker may declare that it is "America's Favorite Pasta" and Papa John's may proclaim "Better Ingredients. Better Pizza" without incurring liability. *See id*. at 387; *Pizza Hut, Inc. v. Papa John Int'l, Inc.*, 227 F.3d 489 (5th Cir. 2000). The courts recognize that such statements are "unquantifiable," *id*. at 499, are not "susceptible of exact knowledge," *Constance*, 25 S.W.3d at 587, and are not "capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Am. Italian Pasta Co*., 371 F.3d at 391.

11

None of the statements that Hurst complains about are capable of being proved false or capable of being reasonably interpreted as a statement of objective fact. Statements that the FX was a "premium" vehicle with a "premium automotive experience," a "leader in style," a "luxury" car, a "superior product representing excellent value," and a vehicle of "uncompromising style and luxury" are classic examples of statements not "susceptible of exact knowledge." *Constance*, 25 S.W.3d at 587. They are "very general" statements, *Guess v. Lorenz*, 612 S.W.2d 831, 833 (Mo. App. 1981), and are not "capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Am. Italian Pasta*, 371 F.3d at 391. The advertising employed by Nissan was merely "dealer's talk, trade talk, puffing of manufacturer's wares, and sales propaganda," and the statements used in the advertising were "mere statements of opinion, promises, expectations, and estimates, which are not actionable." *Carrier Corp. v. Royale Investment Co.*, 366 S.W.2d 346, 350 (Mo. 1963).

Several courts from other jurisdictions have considered statements similar to those made by Nissan in its advertising and have concluded that the statements are not actionable. For example, in *In Re General Motors Corporation Anti-Lock Brake Products Liability Litigation*, 966 F. Supp. 1525 (E.D. Mo. 1997), the court recognized that statements in advertising that a vehicle is "'a luxury car and . . . quality engineered'" were "nothing more than puffing and could not be relied on as basis for a fraud claim." *Id*. at 1536 (quoting *Mason v. Chrysler Corp.*, 653 So.2d 951, 952-54 (Ala. 1995)). In *Sebalik v. General Motors Corporation*, 667 N.Y.S.2d 503, 504 (1998), the New York Supreme Court, Appellate Division, held in a fraud and deceptive selling practices case that a salesman's statements that a car was "luxurious," "would perform

12

excellently," and was of "high quality" were "nothing more than innocent 'puffery[.]'" *Id.* (citation omitted).[7]

The same is true of a representation that a product is uncompromising. In *Oestreicher v. Alienware Corporation*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008), the court held in a class action lawsuit involving violations of California's Unfair Competition Law and False Advertising Law that "generalized and vague statements of product superiority such as 'superb uncompromising quality'" is "non-actionable puffery." *See also Rasmussen v. Apple Inc.*, 27 F. Supp. 3d. 1027, 1043 (N.D. Cal. 2014) ("'quality components and materials' are indistinguishable from those cases which have held that representations that a product was 'superb, uncompromising quality,' 'outstanding quality,' or 'high quality,' constituted puffery"). Moreover, statements like "quality satisfaction guaranteed" and "satisfaction is guaranteed," are common examples of statements that are not actionable. *Uebelacker v. Paula Allen Holdings, Inc.*, 464 F. Supp. 2d 791, 806 (W.D. Wis. 2006); *Sova v. Apple Vacations*, 984 F.Supp. 1136, 1143 (S.D. Ohio 1997).

Likewise, the word "premium," which is the statement upon which Hurst principally relies for his claims, is not susceptible of exact knowledge. In *Rasmussen v. Apple Inc.*, consumers brought a class action against Apple under the California Legal Remedies Act and the

---

[7]*See also Reynolds v. East Dyer Dev. Co.*, 882 F.2d 1249, 1252 (7th Cir. 1989) (statement by developer that subdivision was a "luxury subdivision" was "no more than common sales puffing); *Devine v. Pulte Home Corp.*, 1:15CV1361(JCC/JFA), 2015 WL 8055858 at *5 (E.D. Va. Dec. 4, 2015) ("The representation of a condominium as 'luxury' or 'luxurious' is classic puffery, and is therefore not an actionable misrepresentation of fact.").

California Unfair Competition Law asserting that Apple's advertising made numerous misrepresentations about the iMac display. 27 F. Supp. 3d. at 1030. The court held that statements that the screen was a "very premium class" and that the machines use only "quality components and materials" "are indistinguishable from those cases which have held that representations that a product was 'superb, uncompromising quality,' 'outstanding quality,' or 'high quality,' constituted puffery." *Id*. at 1042-43 (citation omitted). *See also Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 894 (C.D. Cal. 2013) (in a breach of express warranty case, statement that a beverage is a "premium soda" is mere puffery and has "no concrete, discernable meaning); *Anderson v. Bungee Intern. Mfg. Corp.*, 44 F. Supp. 2d 534, 541 (S.D.N.Y. 1999) (in a breach of express warranty claim, statement that bungee cords are of "premium quality" or "superior quality" are "generalized statements of salesmanship and are indistinguishable from statements that this court and other courts have held to be puffery"); *Tietsworth v. Harley Davidson, Inc.*, 677 N.W.2d 233, 246 (Wis. 2004) (in a class action claim based upon Wisconsin's Deceptive Trade Practices Act, the term "premium quality" is "squarely within the puffery definition").

Although Hurst seemingly recognizes that the term "premium" may be considered puffing when considered in isolation, he asserts that it is not puffing when considered in the context of Nissan's brochures. Hurst emphasizes that the marketing materials specifically stated that the FX incorporates "premium automotive machinery." Indeed, whether a given representation is puffing or a statement of fact may depend upon "the circumstances surrounding the representation." *Carpenter*, 853 S.W.2d at 358. In support of his contention, Hurst relies on *Vigil v. Gen. Nutrition Corp.*, No. 15-CV-0079 JM DBH, 2015 WL 2338982 (S.D. Cal. May 13,

14

2015). In that case, an advertisement for a health supplement stated that it was "formulated with premium ingredients to provide maximum potency." *Id*. at *8. The court noted:

> It is true that the words "premium" and "maximum," viewed in isolation, are the kind of subjective terms that are typical of puffery[.] However, in context with the other representations on the [health supplement] label, the statement "[f]ormulated with premium ingredients to provide maximum potency" arguably promises consumers that the product is capable of producing some effect on male potency (as opposed to maximum potency of the product). If Plaintiff can prove that [the health supplement] is totally incapable of doing so, this statement is provably false to the extent that it makes that representation, or at least contributes to the likelihood that the packaging is deceptive as a whole.

*Id*. at *9. Unlike the representations in *Vigil*, however, even when we consider the statement "premium automotive machinery" in its context, there is nothing specific in the representation that is measurable, capable of verification, or capable of being proved false. *Am. Italian Pasta Co.*, 371 F.3d at 391

As to the remaining statements that Hurst points out in his statement of facts as alleged misrepresentations by Nissan—that the FX "epitomize[s] Infiniti's most advanced thinking—with dramatic styling," provides "features that are both elegant and intelligent," has "[a]n ergonomically designed, sport-inspired cockpit [that] embraces the driver and elevates the driving experience," is so impressive that "you can't tear your eyes from it," was "[d]esigned to attract a glance . . . [t]hat evolves into a stare . . . [a]nd provokes a desire"—none of these statement are capable of verification or of being proved false and, therefore, are not statements of fact.

While Nissan urges this court to apply the puffery doctrine to MMPA actions, Hurst argues that it does not apply and that case law establishes that the puffery doctrine typically

15

applies to fraud and breach of warranty actions only.[8]  Neither party cites, nor have we found,

any Missouri case deciding whether the puffery doctrine applies to MMPA cases.[9]

It is unnecessary for this court to declare that the puffery doctrine applies in all MMPA

cases.  We are confident that in this case the statements made by Nissan are not actionable under

the MMPA.  The Missouri Supreme Court has declared that "[p]uffing of wares, sales

propaganda, and other expressions of opinion are common, are permitted and should be

expected."  *Clark*, 726 S.W.2d at 720.  All of the statement made by Nissan in this case are

vague and highly subjective claims of product superiority and are not representations that are not

in accord with the facts regarding the quality of the vehicle and are not representations that tend

to create a false impression regarding the quality of the vehicle.  Indeed, to hold Nissan liable in

this case under the MMPA would result in Nissan being liable to consumers because the

---

[8]Hurst argues that puffery is based upon the notion of reliance and is commonly applied in fraud and warranty actions because both of those actions include reliance as an element.  Hurst is correct that reliance is not required under the MMPA.  Although case law essentially defines puffery as either "(1) exaggerated statements of bluster or boast *upon which no reasonable consumer would rely*; and (2) vague or highly subjective claims of product superiority, including bald assertions of superiority," *Am. Italian Pasta Co.*, 371 F.3d at 390-91, Hurst misunderstands the meaning of "rely" in regard to puffery.  The case law is merely a definition of puffery.  Under the MMPA, plaintiffs need not show individualized reliance upon alleged misrepresentations, but they cannot base their claims on alleged misrepresentations upon which no reasonable consumer would rely.

[9]The United States District Court of the Western District of Missouri has found that the puffery doctrine does apply in MMPA cases.  In *Wright v. Bath & Body Works Direct, Inc*., No. 12-00099-CV-W-DW, 2012 WL 12088132 (W.D. Mo. Oct. 17, 2012), the Western District of Missouri found that the statement that "'Scentports are "the world's most innovative home fragrance diffuser, with a state-of-the-art design"' is a vague and subjective claim of product superiority that amounts to puffery" and that the statement "is not actionable as a 'deception, fraud, false pretense, false promise, misrepresentation or unfair practice' under the MMPA."  *Id*. at *2.  But, of course federal cases, interpreting Missouri law are not binding on this court.  *Lapponese v. Carts of Colorado, Inc.*, 422 S.W.3d 396, 404, (Mo. App. 2013).  In *Morehouse v. Behlmann Pontiac-GMC Truck Service, Inc.*, 31 S.W.3d 55 (Mo. App. 2000), this court's eastern district noted in a fraud and MMPA action that "[a] seller may puff his wares or express his opinion as to the quality and value of his goods even to the point of exaggeration without incurring a warranty obligation."  *Id*. at 59.  The court, however, found that, a car salesman's representations that the minivan that the appellant was purchasing was "in excellent condition," "in good condition," "in tip-top shape," and would be "reliable," were not merely statements of opinion but were actionable representations of fact.  *Id*. at 59-60.  The Court found that the evidence established that the salesman assured the appellant "that the vehicle was in excellent condition when he, at best, had no knowledge as to whether his statements were true or false."  *Id*. at 60.

16

consumers deemed their expectations unmet and would essentially obviate Nissan's limited warranty because basically everything would be guaranteed forever.

As noted previously, the MMPA makes unlawful "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce[.]" § 407.020.1. Although this provision is seemingly "unrestricted, all-encompassing and exceedingly broad," *Peel v. Credit Acceptance Corp.*, 408 S.W.3d 191, 208 (Mo. App. 2013), the regulations define a "misrepresentation" as an "assertion that is not in accord with the facts[,]" and define a "deception" as "any . . . advertisement or solicitation that . . . tends to create a false impression." 15 CSR 60-9.070(1) and 15 CSR 60-9.020(1). We agree with the court in *American Italian Pasta Company*: "To be actionable, the statement must be a 'specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact.'" 371 F.3d at 391 (citation omitted). The exaggerations, sales propaganda, and expressions of opinions in this case are not statements "not in accord with the facts" and are not statements that create a false impression because there is no way that such statements are measurable or are capable of being proved false.

We, therefore, conclude that the circuit court erred in denying Nissan's motion for judgment notwithstanding the verdict because Hurst failed to show that Nissan made an actionable misrepresentation in connection with the FX's advertising. The statements relied upon by plaintiff were not actionable statements of fact as required by the MMPA. As to attorney's fees, the MMPA authorizes attorney's fees to the prevailing party. § 407.025(1), RSMo 2000. Because Hurst and the class he represents are no longer the prevailing party, attorney's fees are

17

no longer authorized.[10]  We reverse the circuit court's judgment and remand for the circuit court to enter a judgment notwithstanding the verdict in favor of Nissan.[11]

/s/ JAMES EDWARD WELSH
James Edward Welsh, Judge

All concur.

---

[10]Hurst also filed a motion for attorney's fees on appeal with this court.  We deny that motion as Hurst is not the prevailing party in this appeal.  § 407.025.

[11]Because we find that Nissan's first point on appeal is dispositive, we need not address Nissan's remaining points on appeal.